VANITA GUPTA
Principal Deputy Assistant Attorney General
Civil Rights Division
SAMEENA S. MAJEED
Chief
TIMOTHY J. MORAN
Deputy Chief
SAMUEL G. HALL
Trial Attorney
Housing and Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave, N.W. – G Street
Washington, D.C. 20530
Telephone: (202) 353-4096
samuel.hall2@usdoj.gov


MICHAEL W. COTTER
United States Attorney
MEGAN L. DISHONG
Assistant U.S. Attorney
District of Montana
P.O. Box 8329
Missoula, Montana 59807
Telephone: (406) 829-3323
megan.dishong@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

-----------------------------------------------------------------------------------------

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | Case No. 6:16-cv-00094 |
| | : | |
| v. | : | |
| | : | **CONSENT ORDER** |
| | : | **AND JUDGMENT** |
| GABRIEL NISTLER, SOMMER | : | |
| NISTLER, ROSS W. ROYLANCE, | : | |
| PATRICIA ROYLANCE, ROYLANCE & | : | |
| NISTLER PROPERTIES, LLC, | : | |
| WERNER-NISTLER PROPERTIES, LLC, | : | |
| DEREK BROWN, AND DEREK | : | |
| BROWN CONSULTING, INC., | : | |
| | : | |
| Defendants. | : | |

-------------------------------------------------------------

# I.   INTRODUCTION

## A.   Background

1.    This action is brought by the United States to enforce Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988 ("Fair Housing Act"), 42 U.S.C. §§ 3601-3631.

2.    This Consent Order is entered into between Plaintiff United States of America ("Plaintiff") and Defendants Gabriel Nistler; Sommer Nistler; Ross W. Roylance; Roylance & Nistler Properties, LLC; Patricia

Roylance; Werner-Nistler Properties, LLC; Derek Brown; and Derek Brown Consulting, Inc. ("Defendants").

3.      This Consent Order is intended to resolve claims detailed in the United States' Complaint, alleging that Defendants have unlawfully discriminated against individuals with disabilities under the FHA by failing to design and construct the following multi-family dwellings (the "Subject Properties") with the features of accessible and adaptive design and construction required by section 804(f) of the FHA, 42 U.S.C. §§ 3604(f)(1), (f)(2), and (f)(3)(C):

- 1604 Warehouse Ave. located in Helena, Montana;
- 1608 Warehouse Ave. located in Helena, Montana;
- 307 South Warren St. located in Helena, Montana;
- 335 South Warren St. located in Helena, Montana;
- 801 East Riggs St. located in Helena, Montana;
- 105 East Lewis St. located in East Helena, Montana;
- 114 East King St. located in East Helena, Montana;
- 802 East Main St. (Old Highway 12) located in East Helena, Montana;
- 806 East Main St. (Old Highway 12) located in East Helena, Montana;
- 900 East Main St. (Old Highway 12) located in East Helena, Montana;
- 906 East Main St. (Old Highway 12) located in East Helena, Montana;
- 106 East Dudley St. located in East Helena, Montana;
- 110 East Dudley St. located in East Helena, Montana;
- 111 East Dudley St. located in East Helena, Montana;
- 114 East Dudley St. located in East Helena, Montana;
- 118 East Dudley St. located in East Helena, Montana;

- 3752 East Old Highway 12 located in East Helena, Montana;
- 3760 East Old Highway 12 located in East Helena, Montana;
- 3768 East Old Highway 12 located in East Helena, Montana;
- 3774 East Old Highway 12 located in East Helena, Montana;
- 3782 East Old Highway 12 located in East Helena, Montana;
- 3790 East Old Highway 12 located in East Helena, Montana;
- 3802 East Old Highway 12 located in East Helena, Montana;
- 3810 East Old Highway 12 located in East Helena, Montana;
- 3818 East Old Highway 12 located in East Helena, Montana;
- 3826 East Old Highway 12 located in East Helena, Montana;
- 3836 East Old Highway 12 located in East Helena, Montana;
- 3838 East Old Highway 12 located in East Helena, Montana;
- 3791 Beechnut St. located in East Helena, Montana;
- 1053 Orion Rd. located in East Helena, Montana; and
- 1125 Orion Rd located in East Helena, Montana.

The Subject Properties were designed and constructed by Defendants. This Consent Order is not intended to resolve claims regarding the possible accessibility barriers designed and constructed by Defendants at any other multifamily properties not identified and addressed herein.

4.     All the Subject Properties are comprised of one two-story, non-elevator, multifamily property. All but one of the Subject Properties contain two single-story ground floor rental units and two single-story upper floor rental units for a total of four units. One property, located at 906 East Main St. in East Helena, Montana, contains four single-story ground floor rental units, and four single-story upper floor units, for a total of eight units. The public and common use areas of the Subject

Properties include pedestrian walkways, mailboxes, trash bins, and parking spaces. Thirteen (13) properties also include a detached garage structure containing individual garage units.

5.     Defendant Gabriel Nistler, together with one or more of the Defendants identified in Paragraph 1, were the developers, general contractors and/or builders of the Subject Properties at the time they were designed and constructed. In addition, Defendant Nistler owned the following Subject Properties during the time of their design and construction: 1604 and 1608 Warehouse Ave., Helena, Montana; 307 South Warren St., Helena, Montana; 806 and 900 East Main St. (Old Highway 12), East Helena, Montana; 110 and 114 East Dudley St., East Helena, Montana; and 3810 East Old Highway 12, East Helena, Montana.

6.     Defendant Sommer Nistler owned the Subject Properties at 307 South Warren St., Helena, Montana and 114 East Dudley St., East Helena, Montana at the time of their design and construction.

7.     Defendant Ross W. Roylance owned the following Subject Properties at the time of their design and construction: 1604 and 1608 Warehouse Ave., Helena, Montana; 307 South Warren St., Helena,

Montana; 801 East Riggs St., East Helena, Montana; 806 and 900 East Main St. (Old Highway 12), East Helena, Montana; 114 East Dudley St., East Helena, Montana, and 3810 East Old Highway 12, East Helena, Montana.

8.      Defendant Roylance & Nistler Properties, LLC, owned and/or developed the following Subject Properties at the time of their design and construction: 1604 and 1608 Warehouse Ave., Helena, Montana; 307 and 335 South Warren St., Helena, Montana; 802, 806, 900 and 906 East Main St. (Old Highway 12), East Helena, Montana; 106, 110, 111, 114 and 118 East Dudley St., East Helena, Montana; 105 East Lewis St., East Helena, Montana; 114 East King St., East Helena, Montana; and 3752, 3760, 3768, 3774, 3782, 3790, 3802, 3818, 3826, 3836 and 3838 East Old Highway 12, East Helena, Montana; 3791 Beechnut St., East Helena, Montana; and 906 East Old Highway 12, East Helena, Montana.

9.      Defendant Patricia Roylance owned the following Subject Properties at the time of their design and construction: 307 South Warren St., Helena, Montana; 801 East Riggs St., East Helena,

Montana; 806 and 900 East Main St. (Old Highway 12), East Helena,

Montana; and 114 East Dudley St., East Helena, Montana.

10.    Defendant Werner-Nistler Properties, LLC, owned the

following Subject Properties at the time of their design and

construction: 1053 and 1125 Orion Dr., East Helena, Montana.

11.    Defendant Derek Brown was responsible for and prepared,

at least in part, the architectural design, site engineering plans, floor

plans and/or construction documents for many of the Subject Properties

including, but not limited to, 1604 and 1608 Warehouse Ave., Helena,

Montana; 307 and 335 South Warren St., Helena, Montana; 802 East

Main St. (Old Highway 12), East Helena, Montana; 906 East Main St.

(Old Highway 12), East Helena, Montana; 106, 110, 111, 114 and 118

East Dudley St., East Helena, Montana; 105 East Lewis St., East

Helena, Montana; and 114 East King St., East Helena, Montana.

12.    Defendant Derek Brown Consulting, Inc. ("Brown

Consulting") is the owner and registered agent for Brown Consulting

and as such used Defendant Brown Consulting for preparing the

architectural design, site engineering plans, floor plans and/or

construction documents for the properties listed above in Paragraph 11.

### B.     Relevant Requirements of the Fair Housing Act

13.    The FHA provides that, for non-elevator residential buildings with four or more dwelling units, all ground-floor units that are designed and constructed for first occupancy after March 13, 1991, are "covered multifamily dwellings" and must include certain basic features of accessible and adaptive design to make such units accessible to or adaptable for use by a person who has or develops a disability. 42 U.S.C. §§ 3604(f)(3)(C) and (f)(7)(B).

14.    The accessible and adaptive design provisions of the FHA require that for covered multifamily dwellings: (i) the public use and common use portions of such dwellings are readily accessible to and usable by persons with a disability ("Requirements 1 and 2"); (ii) all the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by persons with a disability using wheelchairs ("Requirement 3"); (iii) all premises within such dwellings contain the following features of adaptive design: (I) an accessible route into and through the dwelling ("Requirement 4"); (II) light switches, electrical outlets, thermostats, and other environmental controls in accessible locations ("Requirement 5"); (III) reinforcements

in bathroom walls to allow later installation of grab bars ("Requirement 6"); and (IV) usable kitchens and bathrooms such that an individual using a wheelchair can maneuver about the space ("Requirement 7"). 42 U.S.C. § 3604(f)(3)(C). These features are collectively referred to herein as the "Accessible Design Requirements."

15.    For the purposes of this Order, the parties agree that the Subject Properties were designed and constructed for first occupancy after March 13, 1991 and contain buildings with four or more residential apartment units that are "dwellings" as defined by the Fair Housing Act. 42 U.S.C. § 3602(b). Therefore all of the ground-floor units in the Subject Properties are "covered multifamily dwellings" within the meaning of the FHA, 42 U.S.C. § 3604(f)(7)(A) and (B). As such, those units and the public and common use areas including the accessible pedestrian routes at the Subject Properties must comply with the Accessible Design Requirements of 42 U.S.C. § 3604(f)(3)(C).

## C.    Subject Property Interiors

16.    For the purposes of this Order, the parties agree that the interiors of the Subject Properties were designed and constructed using only four (4) building designs and the interior of each Subject Property

9

is representative of the interiors of other Subject Properties designed and constructed based on the same building design. The Parties also agree that for the proposes of this Order these four building designs will be referred to as Type One, Type Two, Type Three, and Type Four designs. Eight (8) of the Subject Properties were designed and constructed based on the Type One design. Fifteen (15) of the Subject Properties were designed constructed based on the Type Two design. Four (4) Subject Properties were based on the Type Three design. And four (4) Subject Properties were based on the Type Four design.

### i.   Type One Subject Properties

17.    The interiors of the following eight (8) Subject Properties were designed and constructed using the Type One design: 307 South Warren St., 335 South Warren St., 802 Old Highway 12, 906 Old Highway 12, 106 East Dudley, 110 East Dudley, 114 East Dudley, and 118 East Dudley (hereinafter the "Type One Subject Properties").

18.    The United States surveyed the interior of the following Type One Subject Properties: 307 South Warren St., 335 South Warren St., and 906 East Main St. In its surveys, the United States identified specific features within the interior of the Type One Subject Properties

that it alleges fail to meet the Accessible Design Requirements of the
FHA. Those features include noncompliant thresholds at the unit
entrances; temperature controls on the baseboard heater that are less
than 15 inches above the floor; electrical outlets that are less than 15
inches above the floor in the living space; kitchen outlets that are
greater than 46 inches above the floor, less than 36 inches from the
counter corner, and/or less than 10.5 inches from the side obstruction;
and a refrigerator that intrudes into the clear floor space of the kitchen
range.

### ii.    Type Two Subject Properties

19.    The interiors of the following fifteen (15) Subject Properties
were designed and constructed using the Type Two design: 1604
Warehouse, 1608 Warehouse, 111 East Dudley, 105 East Lewis, 114
East King, 3768 East Old Highway 12, 3774 East Old Highway 12, 3782
East Old Highway 12, 3790 East Old Highway 12, 3802 East Old
Highway 12, 3810 East Old Highway 12, 3818 East Old Highway 12,
3826 East Old Highway 12, 3836 East Old Highway 12, and 3838 East
Old Highway 12 (hereinafter the "Type Two Subject Properties").

20.    The United States surveyed the interior of the following Type Two Subject Properties: 1608 Warehouse Ave. and 3836 East Old Highway 12. In its surveys, the United States identified specific features within the interior of the Type Two Subject Properties that it alleges fail to meet the Accessible Design Requirements of the FHA. Those features include noncompliant thresholds at the unit entrances; abrupt level changes at the rear patios in excess of 4 inches on the exterior side and ¾ inches with no beveling on the interior side; closet doors that are too narrow; more than 18 inches between the wall and the toilet's centerline; inadequate clear floor space at the toilet; a U-shaped kitchen that contains less than 60 inches of clearance between opposing countertops; interior thresholds at the patio doors that are greater than ¾ inches high with no beveling; and patio doors that are narrower than 31 and 5/8 inches.

### iii.   Type Three Subject Properties

21.    The interiors of the following four (4) Subject Properties were designed and constructed using the Type Three design: 801 East Riggs, 3752 East Old Highway 12, 3760 East Old Highway 12, and 3791 Beechnut St. (hereinafter the "Type Three Subject Properties").

12

22.    The United States surveyed the interior of the following Type Three Subject Properties: 3752 East Old Highway 12. In its survey, the United States identified specific features within the interior of the Type Three Subject Properties that it alleges fail to meet the Accessible Design Requirements of the FHA. Those features include noncompliant thresholds at the unit entrance; noncompliant closet space; more than 18 inches between the wall and the toilet's centerline; kitchen outlets that are less than 12 inches away from the side obstruction; interior thresholds at the patio doors that are greater than ¾ inches high with no beveling; exterior thresholds at the patio doors that are greater than 4 inches high; and patio doors that are narrower than 31 and 5/8 inches.

### iv.    Type Four Subject Properties

23.    The interiors of the following four (4) Subject Properties were designed and constructed using the Type Four design: 806 Old Highway 12, 900 Old Highway 12, 1053 Quail Drive, and 1125 Orion Drive (hereinafter the "Type Four Subject Properties").

24.    The United States surveyed the interior of the following Type Four Subject Properties: 806 Old Highway 12 and 1125 Orion Dr.

In its survey, the United States identified specific features within the interior of the Type Four Subject Properties that it alleges fail to meet the Accessible Design Requirements of the FHA. Those features include noncompliant thresholds at the unit entrances; doors to the bedroom and bathroom that lack a nominal clear opening width of 32 inches; temperature controls on the baseboard heater that are less than 15 inches above the floor; outlets in the bathroom and kitchen that are higher than 46 inches off the ground; outlets in the kitchen that are less 36 inches from the counter corner and/or more than 12 inches from the side obstruction; bathrooms that are not useable due to insufficient maneuvering space; thresholds at the patio door that are greater than ¾ inch and not beveled; and patio doors that are narrower than 31 and 5/8 inches.

## D.   Subject Property Exteriors

25.   The United States surveyed the exteriors of all thirty one (31) Subject Properties. In its survey, the United States identified specific features that it alleges fail to meet the Accessible Design Requirements of the FHA. Those features include, but are not limited to, noncompliant pedestrian routes to the entrances of ground floor

units, to the garage units, to mailboxes, to storage units, and to trash receptacles; an abrupt level change at the unit entrance greater than ¼ inch; a lack of an accessible garage unit and accessible parking; no overhead stairway protection or cain detection near entrances to covered units; and/or knob-style hardware at primary entry doors to the ground floor units rather than lever-style hardware. *See* Appendices E-JJ.

## E.    Consent of the Parties to Entry of this Order

26.    The parties agree that this Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 3614(a). The parties further agree that this controversy should be resolved without further proceedings and without an evidentiary hearing or a trial.

27.    As indicated by the signatures appearing below, the parties agree to the entry of this Consent Order.

**It is hereby ORDERED, ADJUDGED, and DECREED**:

## II.    GENERAL INJUNCTION

28.    Defendants and each of their officers, employees, agents, successors and assigns, and all other persons in active concert or

participation with them are enjoined from discriminating on the basis of disability as prohibited by the FHA, 42 U.S.C. §§ 3604(f)(1)-(3).

29.    Defendants and each of their officers, employees, agents, successors and assigns, and all other persons in active concert or participation with them are enjoined from interfering or preventing the retrofitting ordered herein or the implementation or completion of this Consent Order. Defendants do not currently own or operate any of the Subject Properties. Defendants will make good faith efforts to secure access to the public and common use areas and unit interiors of the Subject Properties for the purpose of planning, evaluating, and performing any action required under this Order to retrofit elements in the public and common use areas and the unit interiors as required herein. If an owner of a Subject Property refuses to allow Defendants access to a Subject Property, or to allow Defendants to make retrofits, the United States may seek an order from the Court requiring the owner to allow such access or adding the owners as Necessary or Indispensable Parties under Rule 19 of the Federal Rule of Civil Procedure. Defendants agree to fully cooperate with the United States in this process.

## III.   CORRECTIVE ACTIONS/RETROFITS

30.   The United States, as set forth herein and in its Complaint, alleges that the Subject Properties do not meet the accessibility requirements of the FHA, or the Fair Housing Accessibility Guidelines ("FHA Guidelines") (56 Fed. Reg. 9472 et seq. (1991)). To address the United States' allegations, Defendants shall complete the actions and retrofits described in this section (Section III) and in Appendices A – JJ, and in accordance with the Interior and Exterior Retrofit Inspection Protocols separately agreed to by the United States and Defendants.

### A. Retrofits to Accessible Routes and Retrofits to the Public and Common Use Areas

31.   As soon as reasonably possible, but by no later than thirty-six (36) months from the entry of this Order, Defendants will complete retrofits to accessible routes and to the public and common use areas listed in Appendices E-JJ and the Exterior Inspection Protocol to bring the accessible routes and the public and common use areas into compliance with the FHA and the FHA Guidelines.

32.   Within ninety (90) days from the date of the entry of this Order, Defendants will provide a notice that is substantially equivalent to Appendix KK to all residents at the Subject Properties. Defendants

shall certify to the United States in writing that the notices have been distributed and the manner in which they were distributed within ten (10) days after such distribution. Defendants may combine this notice with the notice detailed in Paragraph 34.

## B. Retrofits to Covered Multifamily Dwelling Unit Interiors

33.   As soon as reasonably possible, but by no later than thirty-six (36) months from the entry of this Order, Defendants shall complete the retrofits set forth in Appendices A – D and in the Interior Retrofit Inspection Protocol separately agreed to by the United States and Defendants, to the interiors of the ground floor units of the Subject Properties to bring unit interiors into compliance with the FHA and the FHA Guidelines. Retrofits required by this paragraph shall be performed to the extent possible between tenancies, unless a current tenant requests a particular retrofit to be completed while they are a tenant. If, 24 months after the date of entry of this Order the retrofit for any unit has not been completed, then the United States and Defendants shall meet and in good faith determine a plan to complete the retrofit within the 36 month period.

34.    Within ninety (90) days from the date of the entry of this Order, Defendants will provide a notice that is substantially equivalent to Appendix LL to residents in the ground floor units of the Subject Properties. The notice will inform residents that (1) the United States alleges that the unit interiors do not meet the requirements of the FHA and the FHA Guidelines, and that to settle this lawsuit, Defendants have agreed to perform certain retrofits to public and common use areas; (2) the resident can schedule the retrofits; (3) the retrofits will be performed at no cost to the resident; and (4) a payment equivalent to the U.S. General Services Administration rate will be provided to the resident for temporary relocation expenses incurred by the tenant, as required by Section VIII(D) of this Order, infra. Defendants shall certify to the United States in writing that the notices have been distributed and the manner in which they were distributed within ten (10) days after such distribution.

## C. Construction of New Property in Helena

35.    By September 30, 2019, Defendants shall take all actions to complete the construction of 16 new units (the "New Units") in Helena and/or East Helena, MT. As used herein "Unit" means a single ground

19

floor apartment. Defendants shall make the construction of the New

Units fully compliant with ANSI 117.1 (2003), the Fair Housing

Accessibility Guidelines of the Fair Housing Act ("FHAG"), the

Americans with Disabilities Act, the Americans with Disabilities Act

Accessibility Standards, and with the additional requirements set forth

below:

   (a) The New Units shall have accessible pedestrian routes to all
   site amenities and to the public street.

   (d) The New Units' interiors shall be constructed to conform with
   ANSI 117.1, §§ 1003.1 – 1003.14 (2003) Type A units or an
   equivalent standard approved by the United States.

   (c) All common use areas at the New Units shall be constructed in
   conformance with ANSI 117.1 (2003) or an equivalent standard
   approved by the United States.

   (d) Two of the sixteen New Units shall have a bathroom with a
   roll-in shower that is compliant with requirements for an ANSI
   117.1, §§ 1003.1 – 1003.14 (2003) Type A unit.

   (e) Each New Unit will have an accessible garage, with a
   minimum 14'-2" width and a 10'-wide door. FHAG Req. 2; FHAG
   Supplemental Q&A 14(c).

36.    During the term of this Order, upon reasonable notice, the

United States will be permitted full access to the New Units to inspect

for compliance with the FHA, the FHAG, the ADA, the ADA Standards,

ANSI 117.1 (2003), and the additional accessibility features required by

this Order, and it shall also be permitted full access to all construction drawings for the New Units.

37.    By December 30, 2019, Defendants shall provide a certification from a neutral firm not associated with the design or construction of the New Units and approved by the United States that the New Units are fully compliant with ANSI 117.1 (2003), FHA, the FHAG, the ADA, the ADA Standards, and the additional accessibility features required by this Order. Defendants shall bear all costs associated with providing such inspection(s) and certifications.

38.    Except as provided in this paragraph, if Defendants' fail to comply with Paragraphs 35-37 they shall take the outlined actions in Appendix RR. If the Defendants only partially comply with the requirements of Paragraphs 35-37, Defendants shall cover the difference in the number of New Units built and the number of New Units required by Paragraph 35 (16 units) by taking the actions detailed in Appendix RR for an equal number of units, chosen by the Defendants from the properties detailed in Appendix RR. Those actions must include both the interior and exterior retrofits associated with the given unit(s) and must be completed within 24-months of the date of

noncompliance with the requirements of Paragraphs 35-37. If the causes for the failure to comply were not within the control of Defendants, or the events leading to the failure to comply could not be foreseen the United States agrees that it will meet and in good faith discuss other remedies for the failure, including an extension of time for compliance; however, if no agreement can be reached then this provision shall apply.

## D. INCONVENIENCE AND OVERNIGHT STAYS FOR RETROFITTING UNIT INTERIORS

39.     Defendants will endeavor to minimize inconvenience to residents in scheduling and performing retrofits required by this Consent Order at the Subject Properties.

40.     Defendants will pay any resident of a unit scheduled to undergo a retrofit who will be dislocated from the unit for more than twenty-four (24) hours the applicable government per diem rate for food and lodging for the local area (as available at www.gsa.gov – click on "per diem rates" under travel) for each day of undue inconvenience or hardship for the resident(s). Such payment will be made prior to the commencement of any retrofit work on the resident's unit, so that the

resident or homeowner can use the money to obtain alternative living accommodations and food while dislocated.

**E. Neutral Inspector**

41.    Defendants shall enter into a contract with a qualified, neutral inspector approved by the Plaintiff to conduct on-site inspections of the retrofits that have been performed to determine if they have been completed in accord with specifications set forth in Appendices A-JJ, as well as the Interior and Exterior Retrofit Inspection Protocols, separately agreed to by both Parties. The inspection shall take place within 30 days of the completion of all of the retrofits to units and common use areas, or as soon thereafter as practicable. Defendants shall give the Plaintiff at least three weeks' notice of the inspection in order to give Plaintiff an opportunity to have, at their own expense, their representatives present for the inspection.

42.    The inspector shall set out the results of the inspection, including deficits if any, in writing and shall send that report to the Plaintiff and Defendants. If the inspection indicates that not all of the required retrofits have been made as specified in Appendices A-JJ, as well as the Interior and Exterior Retrofit Inspection Protocols,

Defendants shall correct any deficiencies within a reasonable period of time as determined by the inspector, and shall pay for another inspection by the same inspector to certify the deficiencies have been corrected. This process shall continue until the inspector certifies that all of the necessary modifications have been made. Defendants shall pay all of the inspector's costs associated with these inspections, and such payment shall be made without regard to the inspector's findings. The parties agree that the inspector's conclusions with respect to the retrofits will be binding on all parties, and that no further work of any kind will be required with respect to any retrofit certified by the inspector as having been completed. Upon reasonable notice to Defendants, Plaintiff' representatives shall be permitted to inspect the modifications made by Defendants in accordance with Appendices A-JJ, as well as the Interior and Exterior Retrofit Inspection Protocols, or the inspection report of the inspector to ensure compliance; provided, however, that the Plaintiff shall endeavor to minimize any inconvenience caused by such inspections.

## IV. TRANSFER OF INTEREST IN PROPERTIES

43.     The sale or transfer of ownership, in whole or in part, of the Subject Properties during the term of this Consent Order shall not affect Defendants' continuing obligations to retrofit the properties as specified in this Consent Order.

## VI. NON-DISCRIMINATION IN FUTURE DESIGN AND CONSTRUCTION

44.     To the extent Defendants participate in the design or construction of covered multifamily dwellings in the future, Defendants shall design and construct such dwellings in accordance with the accessibility requirements set forth in 42 U.S.C. § 3604(f)(3)(C)(i)-(iii). Defendants shall not seek any approval, waiver or variance from a permitting authority to design or construct a covered multifamily dwelling without one or more of the accessibility features required by 42 U.S.C. §3604(f)(3)(C)(i)-(iii).

45.     For a period of five (5) years after the entry of this Order, Defendants Gabriel Nistler, Sommer Nistler, Ross W. Roylance, Roylance & Nistler Properties, LLC, Patricia Roylance, and Werner-Nistler Properties, LLC shall maintain, and provide to the Plaintiff, the following information and statements regarding any other covered

multifamily dwellings intended to be purchased, developed, built, designed, and/or engineered in whole or in part, by any of them or by any entities in which they have a position of control as an officer, director, member, or manager, or have a ten-percent (10%) or larger ownership share, provided, however, that such information and statements need to be maintained and/or provided only on projects in which any of them is actually involved, not on those projects in which any of them bids or expresses an interest, but does not become finally involved:

    (a)   the name and address of the project;

    (b)   a description of the project and the individual units;

    (c)   the name, address, and telephone number of the civil engineer(s) involved with the project, if any;

    (d)   a statement from the civil engineer(s) involved with the project acknowledging that he/she has reviewed the engineering documents for the project and that, to the best of his/her knowledge, the design specifications therein fully comply with the accessibility requirements of the Fair Housing Act;

    (e)   the name, address and telephone number of the architect(s) involved with the project, if any;

    (f)   a statement from all architect(s) involved with the project, if any, acknowledging that he/she has reviewed the architectural plans for the project and that, to the best of

his/her knowledge, the design specifications therein fully comply with the accessibility requirements of the Fair Housing Act; and

(g)   if the engineering documents or architectural plans are revised, and the revisions could have any impact on the accessibility of the dwellings or project, each of the Defendants listed above in this paragraph shall obtain, maintain, and provide to the United States upon request, a statement from the site engineer(s) or architect(s), who are employed or retained by any Defendant and are involved with the project, as applicable, that all specifications in the revised engineering documents or architectural plans, as pertinent, comply with the requirements of the Fair Housing Act.

46.   For a period of five (5) years after the entry of this Order, Defendants Derek Brown and Derek Brown Consulting, Inc. shall maintain, and provide to the United States, the following information and statements regarding any other covered multifamily dwellings intended to be purchased, developed, built, designed, and/or engineered in whole or in part, by any of them or by any entities in which they have a position of control as an officer, director, member, or manager, or have a ten-percent (10%) or larger ownership share, provided, however, that such information and statements need to be maintained and/or provided only on projects in which any of them is actually involved, not on those

projects in which any of them bids or expresses an interest, but does not become finally involved:

    (a)   the name and address of the project;

    (b)   a description of the project and the individual units;

    (c)   a statement acknowledging that they have reviewed the plans they have prepared for the project and that the design specifications therein fully comply with the accessibility requirements of the Fair Housing Act; and

    (d)   if the plans are revised, and the revisions could have any impact on the accessibility of the dwellings or project, the Defendants listed above in this paragraph will obtain, maintain, and provide to the United States upon request, a statement that all specifications in the revised plans, as pertinent, comply with the requirement of the Fair Housing Act.

## VII. EDUCATIONAL PROGRAM

47.   Within thirty (30) days of the entry of this Order, each Defendant shall provide a copy of this Order or a statement concerning FHA compliance ("Compliance Statement"), a copy of which is attached as Appendix MM, to all his or her employees and agents who have management authority over the design, construction, rental or sale of covered multifamily dwellings, if any. A signed acknowledgment from each such agent or employee stating that he or she has received and read the Order or Compliance Statement, and has had an opportunity

to have questions about the Order or Compliance Statement answered must be secured by Defendants. This acknowledgment shall be substantially similar to the form of Appendix NN.

48. Within thirty (30) days after the date he or she commences an agency or employment relationship with a Defendant, each new employee or agent who has management authority over the design and/or construction of multifamily dwellings of the type at issue in this case will be given a copy of this Order or Compliance Statement and be required to sign the acknowledgment that he or she has received and read the Order or Compliance Statement, and has had an opportunity to have questions about the Order or Compliance Statement answered. This acknowledgment shall be substantially similar to the form of Appendix NN.

49. Defendants shall also obtain and provide their employees and agents who have management authority over the design and/or construction of covered multifamily dwellings with a copy of, the Fair Housing Accessibility Guidelines, 56 Fed. Reg. 9472 (1991) and the United States Department of Housing and Urban Development, Fair Housing Act Design Manual, A Manual to Assist Builders in Meeting

the Accessibility Requirements of the Fair Housing Act, (August 1996, Rev. April 1998) ("the FHA Design Manual") and shall instruct such employees and agents to review the FHA Design Manual and refer to it in connection with the design and construction of any covered multifamily dwelling being designed and built. Defendants shall obtain and provide to all employees and agents whose duties, in whole or in part, involve the management, sale and/or rental of multifamily dwellings at issue in this case copies of the Joint Statements of the Department of Housing and Urban Development and the Department of Justice regarding "Reasonable Accommodations under the Fair Housing Act" (issued May 14, 2004) and "Reasonable Modifications Under the Fair Housing Act" (issued March 5, 2008) and shall instruct them to read and, as necessary, refer to the Joint Statements.

50.    Within sixty (60) days of the entry of this Consent Order, and only if they have not done so by the date of the entry of this Consent Order, Defendants and all employees and agents whose duties, in whole or in part, involve or will involve management authority over the development, design and/or construction of multifamily dwellings of the type at issue in this case shall undergo training on the design and

construction requirements of the FHA.[1] The training shall be conducted by a qualified individual who has been previously approved by counsel for the United States, and any expenses associated with this training shall be borne by Defendants. Defendants shall provide to the United States, within thirty (30) days after the training, the name(s), address(es) and telephone number(s) of the trainer(s); copies of the training outlines and any materials distributed by the trainers; and certifications executed by all Defendants and covered employees and agents confirming their attendance, in a form substantially equivalent to Appendix OO.

## VIII. MONETARY DAMAGES

51.     Within sixty (60) days after the date of this Consent Order, Defendants shall deposit in an interest-bearing account the total sum of TWENTY THOUSAND DOLLARS ($20,000.00) for the purpose of compensating any aggrieved persons who may have suffered as a result of the alleged discriminatory housing practices by Defendants. This

---

[1] The educational program provided to employees not engaged in design, construction or maintenance, such as sales and rental employees, may focus on the portions of the law that relate generally to accessibility requirements as opposed to technical design and construction requirements.

money shall be referred to as the "Settlement Fund," and shall be for the purpose of compensating any aggrieved persons who may have suffered as a result of the alleged discriminatory housing practices by Defendants.

52.    Within sixty (60) days of the entry of this Order, Defendants shall publish the Notice to Potential Aggrieved Persons ("Notice") at Appendix PP informing readers of the availability of compensatory funds. The Notice shall be no smaller than three columns by six inches and shall be published in the Helena Independent Record. Within 10 days of the publication date, Defendants shall provide a copy of the newspaper containing the Notice to counsel for the United States.

53.    Within sixty (60) days of the entry of this Order, Defendants shall send a copy of the Notice to Montana Fair Housing, Inc., 501 East Front Street, Suite 504, Butte, Montana 59701.

54.    Allegedly aggrieved persons shall have twelve (12) months from the date of the entry of this Order to contact the United States. The United States shall investigate the claims of allegedly aggrieved persons and, within eighteen (18) months from the entry of this Order, shall make a preliminary determination of which persons are aggrieved

and whether any amount of damages should be paid to each such person. The preliminary determinations of the appropriate amount of damages shall total no more than TWENTY THOUSAND DOLLARS ($20,000.00) and shall not include any interest that has accrued in the account. The United States will inform Defendants, in writing, of its preliminary determinations, together with a copy of a sworn declaration from each allegedly aggrieved person setting forth the factual basis of the claim. Defendants shall have ninety days to review the declarations and provide to the United States any comments, documents or information that they believe may refute the claim.

55.     Not later than ninety (90) days after receiving the comments, documents and information from Defendants, the United States shall submit its final recommendations to the Court for approval, together with a copy of the declarations and any additional information submitted by Defendants. The final recommendations by the United States shall not total more than TWENTY THOUSAND DOLLARS ($20,000.00), and shall not include any interest that has accrued in the account. When the Court issues an order approving or changing the United States' proposed distribution of funds for allegedly aggrieved

persons, Defendants, within ten (10) days of the Court's order, shall deliver to the United States checks payable to the allegedly aggrieved persons in the amounts approved by the Court, plus a proportionate share of the interest that has accrued in the Settlement Fund as of the day before the checks are sent to the United States. In no event shall the aggregate of all such checks exceed the sum of the Settlement Fund, including accrued interest. No allegedly aggrieved person shall be paid until he/she has executed and delivered to counsel for the United States the release at Appendix QQ.

56.     Defendants shall permit the United States, upon reasonable notice, to review any records that may reasonably facilitate its determinations regarding the claims of alleged aggrieved persons.

57.     Nothing in this Consent Order shall preclude the United States from making its own efforts to locate and provide notice to potential aggrieved persons.

58.     After the satisfaction of Paragraphs 51-56, above, and the expiration of the corresponding time periods, any money remaining in the Settlement Fund, including interest, shall be distributed to a qualified organization(s) for the purpose of conducting enforcement or

educational activities related to the Fair Housing Act in Montana,

including education concerning the obligations of the Fair Housing Act

for owners and developers of multi-family housing, with an emphasis on

the protection of the rights of persons of with disabilities. Before

selecting the qualified organization(s), Defendants will obtain a

proposal from the organization(s) on how the funds will be used

consistent with the above-stated purpose, submit such proposal to the

United States, and consult with and obtain the non-objection of the

United States. The United States and Defendants may request

modification of the proposal before approving the organization(s). The

parties shall thereafter seek approval from the Court to distribute the

remaining funds to the qualified organization(s).

59.    Defendants shall also require that the qualified

organization(s) receiving funds submit to Defendants and the United

States a detailed report on how the funds are utilized within one year of

receipt of funds, and every year thereafter until the funds are

exhausted.

## IX. NOTICE OF DEFENDANTS' NON-DISCRIMINATION POLICY

60.     Within ten (10) days of entry of this Consent Order, the Defendants shall post and prominently display in their places of business a poster no smaller than 10 by 14 inches indicating that all dwellings are available for rental on a nondiscriminatory basis. A poster that comports with 24 C.F.R. Part 110 will satisfy this requirement.

61.     All advertising in newspapers and all pamphlets, brochures and other promotional literature regarding the Subject Properties or any new complexes that Defendants may develop or construct, shall contain, in a conspicuous location, a statement that the dwelling units comply with the accessibility requirements of the federal Fair Housing Act.

## XI. ADDITIONAL MONITORING REQUIREMENTS

62.     Within ninety (90) days of the entry of this Consent Order, Defendants shall submit to the Plaintiff an initial report containing (a) the signed certifications of attendance for persons who have completed the education program specified in Paragraph 50; and (b) confirmation that Defendants Gabriel Nistler, Sommer Nistler, Ross W. Roylance,

Roylance & Nistler Properties, LLC, Patricia Roylance, and Werner-Nistler Properties, LLC have displayed the poster described in Paragraph 60.

63.     Thereafter, for a period of five (5) years after the date of this Consent Order, Defendants shall, on or before the anniversary of this Consent Order, submit to the United States a report containing: (a) the signed acknowledgments of new employees involved in the design and/or construction of covered multifamily dwellings verifying that, in accordance with Paragraph 48, they have received and read this Consent Order and had an opportunity to have questions about the Order or Compliance Statement answered; and (b) the information referred to in Paragraphs 45 and 46 regarding other covered multifamily dwellings intended to be purchased, developed, built, designed, and/or engineered by Defendants.  The final report required by this paragraph shall be submitted sixty (60) days prior to the expiration of this Order.

64.     Defendants shall advise the United States in writing within fifteen (15) days of receipt of any new written or verbal complaints against them and, if known their employees or agents, regarding

alleged disability discrimination in housing under the FHA. Defendants shall also promptly provide the United States all non-privileged information it may request concerning any such complaint. Within fifteen (15) days of the resolution of any such complaints, Defendants shall advise the United States, in writing, of such resolution.

65.     Defendants are required to preserve all non-privileged records related to this Consent Order regarding the Subject Properties and all future covered multifamily dwellings to be designed and constructed by them for a period of five (5) years after the entry of this Consent Order. Within that time, and upon reasonable notice to Defendants, representatives of the United States may be permitted to inspect and copy any non-confidential records related to the design and construction of covered multi-family dwellings or inspect future covered multifamily dwellings designed and constructed by them, provided, however, that the United States shall endeavor to minimize any inconvenience to Defendants and Defendants' tenants from such inspections.

## XII. DURATION AND SCOPE OF CONSENT ORDER AND TERMINATION OF LEGAL ACTION

66.     This Consent Order shall remain in effect for five (5) years after the date of its entry. By consenting to entry of this Order, the parties agree that in the event that a Defendant engages in any future conduct occurring after entry of this Order that leads to a determination of a violation of the Fair Housing Act, such conduct shall constitute a "subsequent violation" pursuant to 42 U.S.C. § 3614(d)(1)(C)(ii).

67.     This case is dismissed with prejudice except that the Court shall retain jurisdiction to enforce the terms of the Order. Upon good cause shown, the Plaintiff may move the Court to extend the term of this Order in the interests of justice.

68.     The Parties agree that this Consent Order applies only to the Subject Properties and, as specified, to the Defendants' current and future design and construction (*see* Section VI). The Parties agree that this Consent Order does not release the Defendants from any claims that the United States may have concerning any other covered multifamily dwellings not identified and addressed herein.

69.     The parties shall endeavor, in good faith, to resolve informally any differences regarding interpretation of and compliance

with this Order prior to bringing such matters to the Court for resolution. However, in the event of a failure by a party to perform, in a timely manner, any act required by this Order or otherwise for their failure to act in conformance with any provision, any party may move this Court to impose any remedy authorized by law or equity, including, but not limited to, an order requiring performance of such act or deeming such act to have been performed, and an award of any damages, costs, and reasonable attorney's fees which may have been occasioned by the violation or by the failure to perform.

## XIII. TIME FOR PERFORMANCE

70.     Any time limits for performance imposed by this Consent Order may be extended by the mutual written agreement of the Plaintiff and the relevant Defendant or Defendants.

## XIV. DUPLICATION OF REQUIREMENTS

71.     The Parties agree that any requirements that are set out in this Order shall be deemed completed for an individual Defendant if that Defendant has already met the same requirement pursuant to the Court's Consent Order in the *United States v Gabriel Nistler et al.*, 6:13-cv-00053 (D. Mont.), filed on October 7, 2014.

## XV. COSTS OF LITIGATION

72.     The United States and Defendants will bear their own costs and attorney's fees associated with this litigation.

## XVI. TERMINATION OF LITIGATION HOLD

73.     The parties agree that, as of the date of the entry of this Consent Order, litigation is not "reasonably foreseeable" concerning the matters described above or in the Complaint and Complaint in Intervention. To the extent that any party previously implemented a litigation hold to preserve documents, electronically stored information (ESI), or things related to the matters described above, the party is no longer required to maintain such litigation hold. Nothing in this paragraph relieves any party of any other obligations imposed by this Consent Order.

SO ORDERED this _____ day of _____, 2016.


_____

UNITED STATES DISTRICT COURT
JUDGE

The undersigned apply for and consent to the entry of this Consent

Order:

FOR PLAINTIFF UNITED STATES:

> VANITA GUPTA
> Principal Deputy Assistant Attorney
> General
> Civil Rights Division
>
> SAMEENA S. MAJEED
> Chief
>
> s/ Samuel G. Hall
> TIMOTHY J. MORAN
> Deputy Chief
> SAMUEL G. HALL
> Trial Attorney
> Housing and Civil Enforcement Section
> Civil Rights Division
> U.S. Department of Justice
> 950 Pennsylvania Ave, N.W. – G Street
> Washington, D.C. 20530
> Telephone: (202) 353-4096
> samuel.hall2@usdoj.gov
>
>
> s/ Megan L. Dishong
> MICHAEL W. COTTER
> United States Attorney
> MEGAN L. DISHONG
> Assistant U.S. Attorney
> District of Montana

P.O. Box 8329
Missoula, Montana 59807
Telephone: (406) 829-3323
megan.dishong@usdoj.gov


FOR DEFENDANTS:


s/ Brian K. Gallik
BRIAN K. GALLIK
Attorney at Law 421 West Mendenhall
PO Box 70
Bozeman, Montana 59771
(406) 404-1728
brian@galliklawfirm.com

ATTORNEY FOR GABRIEL NISTLER,
SOMMER NISTLER, ROYLANCE &
NISTLER PROPERTIES, LLC, and
WERNER-NISTLER PROPERTIES, LLC

DEFENDANTS:

_____
Gabriel Nistler

_____
Sommer Nistler

Roylance & Nistler Properties,
LLC

_____
By: Gabriel Nistler
Its: Manager

Werner-Nistler Properties, LLC

_____
By: Gabriel Nistler
Its: Manager

_____
Ross W. Roylance

_____
Patricia Roylance

_____
Derek Brown

Derek Brown Consulting, Inc.

_____

By: Derek Brown
Its: President

DEFENDANTS:

_____
Gabriel Nistler

_____
Sommer Nistler

Roylance & Nistler Properties,
LLC

_____
By: Gabriel Nistler
Its: Manager

Werner-Nistler Properties, LLC

_____
By: Gabriel Nistler
Its: Manager

_____
Ross W. Roylance

_____
Patricia Roylance

_____
Derek Brown

Derek Brown Consulting, Inc.

_____
By: Derek Brown
Its: President

**APPENDIX A - NISTLER ET AL. Unit Interior Retrofits  for Type One Subject Properties - 307 South Warren St., 335 South Warren St., 802 Old Highway 12, 906 Old Highway 12, 106 East Dudley, 110 East Dudley, 114 East Dudley, and 118 East Dudley**

**References in the citations are as follows:**
FHAG - Fair Housing Accessibility Guidelines
FHADM - Fair Housing Act Design Manual
ANSI - ANSI A117.1-1986
ADA Standards - 1994 ADA Standards

**Interior Retrofits Required in Ground Floor Units at:**
802 Old Highway 12, East Helena, MT
906 Old Highway 12, East Helena, MT
106 East Dudley, East Helena, MT
110 East Dudley, East Helena, MT
114 East Dudley, East Helena, MT
118 East Dudley, East Helena, MT

**The retrofits described below will be made to the following properties in accordance with the terms of the Consent Order if Defendants do not comply with requirements of Paragraphs 35-37 of the Consent Order:**
307 South Warren St., Helena, MT
335 South Warren St., Helena, MT

| Requirements of the Guidelines | Unit Type - 2BR + 1BA (Inspected ground floor units at: 307 South Warren St., Helena, MT; 335 South Warren St., Helena, MT; and 906 Old Highway 12, East Helena, MT.) | |
|---|---|---|
| | **Violation** | **Retrofits** (for all units with the same type of violation) |
| FHAG Req. #2 | The entrance door at all inspected properties has knob hardware instead of lever hardware [ANSI 4.13.9] | Install lever hardware at all covered ground floor units [ANSI 4.13.9] |
| FHAG Req. #2 | Abrupt level change at the unit entrance measured 1 1/4", rather than a maximum 1/4" or 1/2" with a bevel 1:2 | See retrofit for the exterior side of the threshold, below |
| FHAG, Req. #4 | The interior side of the threshold at the unit entry door measured 1 1/4" without a bevel at 307 South Warren St.; 1 3/8" without a bevel at 335 South Warren St.; and 7/8" without a bevel at 906 Old Highway 12,  rather than the maximum of 3/4" with a bevel | Replace or adjust threshold of unit primary entrance door to make threshold flush; or ¼" high maximum; or ¾" max with 1:2 bevel on the interior side |

| FHAG, Req. #4 | The exterior side of the threshold at the unit entry door measured 1/2" without a bevel at 307 South Warren St. and 3/4" without a bevel at 906 Old Highway 12, rather than the maximum of 3/4" with a bevel | Replace or adjust threshold of unit primary entrance door to make threshold flush; or ¼" high maximum; or 1¼" maximum with 1:2 bevel on the exterior side |
|---|---|---|
| FHAG Req. #5 | The controls on baseboard heaters measured 4" above the finished floor at both 307 South Warren St. and 906 Old Highway 12, rather than a minimum of 15" and a maximum of 28" above the finished floor | See Interior Retrofit Inspection Protocol, Location of Temperature Gauges and Control |
| FHAG Req. #5 | The electrical outlets measured 12 3/4" to 13 1/2" above the finished floor throughout 307 South Warren St. and 13 1/2" above the finished floor throughout 906 Old Highway 12, rather than the minimum of 15" above the finished floor | See Interior Retrofit Inspection Protocol, Location of Temperature Gauges and Control |
| FHAG Req. #7, Guideline (1)(a) | The centerline of the range in the kitchen measured 17" from refrigerator at 307 South Warren St., rather than the minimum of 24" | Slide the fridge over to create approximately 6" of additional space. Offer to provide the tenant, at the Defendants' option, either filler for cabinets and countertop on request to be installed by Defendants at their expense or a refrigerator with less depth (so it is flush with the face of the range) to be installed by Defendants at their expense |
| FHAG, Req. #5 | Two outlets in the kitchen measured 17" and 21", respectively, from the corner at 335 South Warren St., and 1 kitchen outlet measured 10 1/2" from the corner at 906 Old Highway 12, rather than the minimum of 36" from the corner, and 12" from the side obsruction | Move at least one kitchen outlet per wall to 46" maximum above the finished floor, 36" minimum from the corner, and 12" minimum to the side obstruction measured to the centerline of the outlets [FHDM p. 5.8] |
| FHAG, Req. #6 | By visual inspection alone, there is no way to confirm the presence of reinforcing in the walls of units surveyed in the complex | Provide a declaration confirming the presence of reinforcing in the walls or, if reinforcing was not installed, provide wing-its and grab bars upon request |

**APPENDIX B - NISTLER ET AL. Unit Interior Retrofits for Type Two Subject Properties-- 1604 Warehouse, 1608 Warehouse, 111 East Dudley, 105 East Lewis, 114 East King, 3768 East Old Highway 12, 3774 East Old Highway 12, 3782 East Old Highway 12, 3790 East Old Highway 12, 3802 East Old Highway 12, 3810 East Old Highway 12, 3818 East Old Highway 12, 3826 East Old Highway 12, 3836 East Old Highway 12, and 3838 East Old Highway 12**

**References in the citations are as follows:**
FHAG - Fair Housing Accessibility Guidelines
FHADM - Fair Housing Act Design Manual
ANSI - ANSI A117.1-1986
ADA Standards - 1994 ADA Standards

**Interior Retrofits Required in Ground Floor Units in :**
1604 Warehouse, Helena, MT
1608 Warehouse, Helena, MT
111 East Dudley, East Helena, MT
105 East Lewis, East Helena, MT
114 East King, East Helena, MT
3768 East Old Highway 12, East Helena, MT
3774 East Old Highway 12, East Helena, MT
3782 East Old Highway 12, East Helena, MT
3790 East Old Highway 12, East Helena, MT
3802 East Old Highway 12, East Helena, MT
3810 East Old Highway 12, East Helena, MT
3818 East Old Highway 12, East Helena, MT
3826 East Old Highway 12, East Helena, MT
3836 East Old Highway 12, East Helena, MT
3838 East Old Highway 12, East Helena, MT

| | Unit Type - 2BR + 1BA (Inspected ground floor units at: 1608 Warehouse, Helena, MT, 3810 Old Hwy 12,  East Helena, MT, and 3836 East Old Highway 12, East Helena, MT ) | |
|---|---|---|
| **Requirements of the Guidelines** | **Violation** | **Retrofits** (for all units with the same type of violation) |
| FHAG Req. #2 | The entrance door at all inspected properties has knob hardware instead of lever hardware [ANSI 4.13.9] | Install lever hardware at all covered ground floor units [FHAG Requirement #2; ANSI 4.13.9] |
| FHAG Req. #2 | Abrupt level change at the unit entrance measured 1 1/2", rather than a maximum 1/4" or 1/2" with a bevel 1:2 | See retrofit for the exterior side of the threshold, below |

| | | |
|---|---|---|
| FHAG, Req. #4 | The interior side of the threshold at the unit entry door measured 1/2", without a bevel at 1608 Warehouse; 1" without a bevel at 3836 East Old Highway 12; and  1"without a bevel at 3810 East Old Highway 12, rather than the maximum of 3/4" with a bevel | Replace or adjust threshold of unit primary entrance door to make threshold flush; or ¼" high maximum; or ¾" max with 1:2 bevel on the interior side |
| FHAG, Req. #4 | The exterior side of the threshold at the unit entry door measured 1/2", without a bevel at 1608 Warehouse; 1 1/4" without a bevel  at 3836 East Old Highway 12; and  3/8"without a bevel at 3810 East Old Highway 12, rather than the maximum of 3/4" with a bevel | Replace or adjust threshold of unit primary entrance door to make threshold flush; or ¼" high maximum; or 1¼" maximum with 1:2 bevel on the exterior side |
| FHAG Requirement #3, Guideline 2 | The closet depth measured 26" with a 2'-6" door and 27 3/4" clear width at 1608 Warehouse, rather than the minimum 31 5/8th clear width and nominal 2' - 10" doors for closets 24" or more in depth | Move shelving forward to the door frame and fill in the space behind with new shelving |
| FHAG Req.7, Guideline (2)(a)(ii) | The centerline of the toilet measured 21" from the adjacent wall at 1608 Warehouse, rather than 18" | See Interior Retrofit Inspection Protocol, Location of Toilets Adjacent to Sidewall/Bathtub or Lavatory |
| FHAG, Req. #7 | The clearance at the toilet measured 45 1/2" wide from the bathtub to sidewall  at 1608 Warehouse; 46 1/2" wide from the bathtub to the sidewall at 3836 East Old Highway 12; and  45 3/8" wide from the bathtub to the sidewall at 3810 East Old Highway 12, rather than the 48" wide minimum | See Interior Inspection Protocol, Clearance at Toilet |
| FHAG Req.7 | The kitchen measured 57" wide at the base and 48 1/2" at the refrigerator at 1608 Warehouse and 57" wide at the base, and 52 1/2" at the refrigerator at 3836 East Old Highway 12, rather that the 60" wide minimum | See Interior Inspection Protocol, Width of U-Shaped Kitchen |

| FHAG Req. #3, Guideline (2) | The patio sliding door measured 25 7/8"clear at 1608 Warehouse;  25 1/2"clear at 3836 East Old Highway 12; and 24 1/2" clear at 3810 East Old Highway 12, rather the minimum clear width of 31 5/8" | See Interior Inspection Protocol, Concrete Patio and Patio Door Retrofits |
|---|---|---|
| FHAG Req. #4 | The  interior of the sliding door track at the patio door measured 7/8" high without a bevel at 1608 Warehouse; 2 1/2" high without a bevel  at 3836 East Old Highway 12;  1" high without a bevel at 3810 East Old Highway 12, rather than the maximum 3/4" with a bevel | See Interior Inspection Protocol, Concrete Patio and Patio Door Retrofits |
| FHAG Req. #4 | The concrete patio measured 8" below the finished floor level of the unit at 1608 Warehouse, rather than the maximum of 4" | See Interior Inspection Protocol, Concrete Patio and Patio Door Retrofits |
| FHAG, Req. #6 | By visual inspection alone, there is no way to confirm the presence of reinforcing in the walls of units surveyed in the complex | Provide a declaration confirming the presence of reinforcing in the walls or, if reinforcing was not installed, provide wing-its and grab bars upon request |

**APPENDIX C - NISTLER ET AL. Unit Interior Retrofits for Type Three Subject Properties-- 801 East Riggs, 3752 East Old Highway 12, 3760 East Old Highway 12, and 3791 Beechnut Street**

References in the citations are as follows:
FHAG - Fair Housing Accessibility Guidelines
FHADM - Fair Housing Act Design Manual
ANSI - ANSI A117.1-1986
ADA Standards - 1994 ADA Standards

**Interior Retrofits Required in Ground Floor Units at:**
801 East Riggs, East Helena, MT
3791 Beechnut Street, East Helena, MT

**The retrofits described below will be made to the following properties in accordance with the terms of the Consent Order if Defendants do not comply with requirements of Paragraphs 35-37 of the Consent Order:**
3752 East Old Highway 12, East Helena, MT
3760 East Old Highway 12, East Helena, MT

| | Unit Type - 2BR + 1BA (Inspected ground floor units at: 3752 East Old Highway 12, East Helena, MT) | |
|---|---|---|
| **Requirements of the Guidelines** | **Violation** | **Retrofits** (for all units with the same type of violation) |
| FHAG Req. #2 | The entrance door at the inspected property has knob hardware instead of lever hardware [ANSI 4.13.9] | Install lever hardware at all covered ground floor units |
| FHAG Req. #2 | Abrupt level change at the unit entrance measured 1/2", rather than a maximum 1/4" or 1/2" with a bevel 1:2 | See retrofit for the exterior side of the threshold, below |
| FHAG, Req. #4 | The interior side of the threshold at the unit entry door measured 1 1/8" without a bevel, rather than a maximum of 3/4" with a bevel | Replace or adjust threshold of unit primary entrance door to make threshold flush; or ¼" high maximum; or ¾" max with 1:2 bevel on the interior side |

| | | |
|---|---|---|
| FHAG, Req. #4 | The exterior side of the threshold at the unit entry door measured 1/2" without a bevel, rather than a maximum of 3/4" with a bevel | Replace or adjust threshold of unit primary entrance door to make threshold flush; or ¼" high maximum; or 1¼" maximum with 1:2 bevel on the exterior side |
| FHAG Req. #3, Guideline 2 | The closet depth measured 27 3/4" with a 2'-6" door and a 27 3/4" clear width, rather than the minimum 31 5/8 clear width and nominal 2' - 10" doors for closets 24" or more in depth | Move shelving forward to the door frame and fill in the space behind with new shelving |
| FHAG Req.7, Guideline (2)(a)(ii) | The centerline of the toilet measured 19 1/2" from the adjacent wall, rather than 18" | Install offset flange so the centerline of the toilet will be at 18" from adjacent wall |
| FHAG, Req. #5 | Two of the kitchen outlets measured 5" and 11 1/4", respectively, from side obstruction, rather than the minimum of 12" from the side obstruction and 36" from the corner | Move at least one kitchen outlet per wall to 46" maximum above the finished floor, 36" minimum from the corner, and 12" minimum to the side obstruction measured to the centerline of the outlets [FHDM p. 5.8] |
| FHAG Req. #3 | The 2'-8" swinging patio door measured 29 1/2" clear width, rather than the minimum 31 5/8" | Offer swing clear hinges on the opposite side of the door frame, to be installed Defendants at their expense if requested by a renter with a disability |
| FHAG Req. #4 | The interior threshold at the patio door measured 1 1/16" high without a bevel, rather than the maximum 3/4"high with a bevel | Install a bevel ramp at 1:2 |
| FHAG Req. #4 | The concrete patio measured 5 1/2" below the finished floor level of the unit, rather than the maximum 4" | Offer to raise the patio surface to no less than 1/2" from the finished floor level, to be done by the Defendants at their expense if requested by a renter with a disability |
| FHAG, Req. #6 | By visual inspection alone, there is no way to confirm the presence of reinforcing in the walls of units surveyed in the complex | Provide a declaration confirming the presence of reinforcing in the walls or, if reinforcing was not installed, provide wing-its and grab bars upon request |

**APPENDIX D - NISTLER ET AL. Unit Interior Retrofits for Type Four Subject Properties - 806 Old Highway 12, 900 Old Highway 12, 1053 Quail Drive, and 1125 Orion Drive**

**References in the citations are as follows:**

FHAG - Fair Housing Accessibility Guidelines

FHADM - Fair Housing Act Design Manual

ANSI - ANSI A117.1-1986

ADA Standards - 1994 ADA Standards

**The retrofits described below will be made to the following properties in accordance with the terms of the Consent Order if Defendants do not comply with requirements of Paragraphs 35-37 of the Consent Order:**

806 Old Highway 12, East Helena, MT

900 Old Highway 12, East Helena, MT

1053 Quail Drive, East Helena, MT

1125 Orion Drive, East Helena, MT

**Unit Type - 2BR + 1BA (Inspected ground floor units at: 806 Old Highway 12, East Helena, MT and 1125 Orion Drive, East Helena, MT)**

| Requirements of the Guidelines | Violation | Retrofits (for all units with the same type of violation) |
|---|---|---|
| FHAG Req. #2 | The entrance door at all inspected properties has knob hardware instead of lever hardware [ANSI 4.13.9] | Install lever hardware at all covered ground floor units [ANSI 4.13.9] |
| FHAG, Req. #4 | The interior side of the threshold at the unit entry door measured 1" without a bevel at 806 Old Highway 12 and 1 1/8" without a bevel at 1125 Orion Drive, rather than a maximum of 3/4" with a bevel | Replace or adjust threshold of unit primary entrance door to make threshold flush; or ¼" high maximum; or ¾" max with 1:2 bevel on the interior side |
| FHAG, Req. #4 | The exterior side of the threshold at the unit entry door measured 1/2" without a bevel at both inspected properties, rather than a maximum of 3/4" with a bevel | Replace or adjust threshold of unit primary entrance door to make threshold flush; or ¼" high maximum; or 1¼" maximum with 1:2 bevel on the exterior side |

| | | |
|---|---|---|
| FHAG Req. #3, Guideline (2) | The bedroom and bathroom doors measured 2'-6" with a 25 7/8" clear width at 806 Old Highway 12. At 1125 Orion Drive, bedroom doors measured 2'-6" with a 28" clear width and the bathroom door measured 2'-4" with a 26" clear width. Bedroom and bathroom doors require nominal 2'-10" doors with a 31 1/2" minimum clear width | Widen bedroom doors to 31 5/8" min. clear width. For bathroom doors, either (1) replace lavatory with wall mounted sink and widen door or (2) widen door and install swing clear hinges |
| FHAG Req. #5 | The temperature controls measured 4" above the finished floor at 806 Old Highway 12; and 57 1/2" to 58 1/4" above the finished floor in four locations at 1125 Orion Drive, rather than the minimum 15" and the maximum 48" above the finished floor | See Interior Retrofit Inspection Protocol, Location of Temperature Gauges or Controls |
| FHAG Req. #5 | The electrical outlets measured 13" above the finished floor throughout 806 Old Highway 12 and 12 1/2" to 13" above the finished floor throughout 1125 Orion Drive, rather than the minimum 15"above the finished floor | See Interior Retrofit Inspection Protocol, Location of Temperature Gauges and Control |
| FHAG, Req. #7, Guideline (2)(a)(i) | Clear floor space beyond the swing of the door in the bathroom measured 31 1/2" wide x 38" deep at 806 Old Highway 12 and 29 3/4" wide x 30 1/2" deep at 1125 Orion Drive, rather than a minimum 30" wide by 48" deep | Reverse the swing of the door and install the hinges on the opposite side of the door frame |
| FHAG Req. #7 | The centerline of the lavatory measured 16 3/4" from the wall without a removable base cabinetat 806 Old Highway 12, rather than the minimum 24" | Install removable base cabinet under the sink, insulate pipes, and provide floor finishes underneath, or, alternatively, relocate sink bowl so that there is a 30" x 48" clear floor space centered on the sink bowl for a parallel approach. [FHADM 7.49-7.52; ANSI 1986, 4.19.2, 4.19.4, and 4.19, Figure 3] |
| FHAG Req.7 Sec. (2)(a)(ii) | The centerline of the toilet measured 15" from the bathrub at 806 Old Highway 12, rather than the required 18" | Install offset flange so that the centerline is 16 to 18" from the bathtub |

| | | |
|---|---|---|
| FHAG, Req. #5 | One of the kitchen outlets at 806 Old Highway 12  measured 21" from corner and  two of the kitchen outlets  at 1125 Orion Drive measured 18 1/2" from corner and 11" from refrigerator, rather than the minimum 12" from the side obstruction and 36" from the corner | Move the kitchen outlets to 36" minimum from the corner and 12" minimum to the side obstruction measured to the centerline of the outlets |
| FHAG Req. #3 | The patio sliding door measured 25 3/4"clear at 1125 Orion Drive, rather than the minimum 31 5/8" clear | Provide a new sliding door that provides 31 5/8" clear width |
| FHAG Req. #4 | Then interior threshold at the patio door measured 1 1/2" high without a bevel at 806 Old Highway 12 and  1 1/4" high without a bevel at 1125 Orion Drive, rather than the maximum 3/4" with a bevel | Replace the sliding door track with a compliant track |
| FHAG, Req. #6 | By visual inspection alone, there is no way to confirm the presence of reinforcing in the walls of units surveyed in the complex | Provide a declaration confirming the presence of reinforcing in the walls or, if reinforcing was not installed, provide wing-its and grab bars upon request |

**APPENDIX E - 335 Warren St. - Retrofits to Common Use and Public Use Areas**

**References in the citation column are as follows:**
**FHAG - Fair Housing Accessibility Guidelines**
**ANSI - ANSI A117.1-1986**
**ADA Standards - 1994 ADA Standards**
**Inspection Protocol - the Inspection Protocol separately agreed to by the parties and described in Part X of the Consent Decree**

| | PUBLIC AND COMMON USE AREAS | |
|---|---|---|
| **Requirements of the Guidelines** | **Violation** | **Retrofit Retrofit [to be required only if Defendants do not comply with the requirements of Paragraphs 35-37 of the Consent Order]** |
| FHAG Req. #2 | The route from the public sidewalk to the covered units has a running slope of 6.1% to 18.6% and a cross slope of 3.8% to 12.6%, rather than a maximum runing slope of 5% and maximum cross slope of 2% | Install an accessible route to public street sidewalk. See Exterior Retrofit Inspection Protocol |
| FHAG Req. #2 | There is no marked and compliant handicapped parking space or aisle | Provide a compliant handicap parking space and sign on an accessible route. See Exterior Retrofit Inspection Protocol |
| FHAG Req. #2 | The route from the parking spaces to the unit entrance has a cross slope of 3.4% to 7.4%, rather than the maximum 2% cross slope | Fix cross slopes to provide a compliant route. See Exterior Retrofit Inspection Protocol |
| FHAG Req. #2 | No accessible pedestrian route from the unit entrance to the trash dumpster | Relocate dumpsters to an accesible location. See Exterior Inspection Protocol |
| FHAG Req. #2 | No accessible pedestrian route from the unit entrance to the mailboxes [ANSI 4.3.2(4)] | Relocate mailboxes to an accessible location. See Exterior Retrofit Inspection Protocol |

**APPENDIX F - 3752 Hwy 12 - Retrofits to Common Use and Public Use Areas**

**References in the citation column are as follows:**
**FHAG - Fair Housing Accessibility Guidelines**
**ANSI - ANSI A117.1-1986**
**ADA Standards - 1994 ADA Standards**
**Inspection Protocol - the Inspection Protocol separately agreed to by the parties and described in Part X of the Consent Decree**

| | PUBLIC AND COMMON USE AREAS | |
|---|---|---|
| **Requirements of the Guidelines** | **Violation** | **Retrofit Retrofit [to be required only if Defendants do not comply with the requirements of Paragraphs 35-37 of the Consent Order]** |
| FHAG Req. #2 | There is no marked and compliant handicapped parking space or aisle | Provide a compliant handicap parking space and sign on an accessible route. See Exterior Retrofit Inspection Protocol |
| FHAG Req. #2 | The route from parking to the unit has a running slope between 12.4% to 12.6%, rather than a maximum 5% running slope | Fix running slopes to provide a compliant route. See Exterior Retrofit Inspection Protocol |
| FHAG Req. #2 | The maneuvering space at the mailbox has a slope of 3.4% to 5.1%, rather than the maximum slope of 2% | Provide maneuvering space at mailboxes that is at least 36" wide with 5' x 5' turn-space and that slopes no more than 2% in any direction. Or relocate mailboxes to a compliant location on an accessible route with a compliant clear floor space at the mailbox. See Exterior Inspection Protocol |

| | | |
|---|---|---|
| FHAG Req. #2 | The garage doors have an 8' door and are 11'-5" wide inside, rather than the minimum 14'-2" width | See Exterior Retrofit Inspection Protocol |
| FHAG Req. #2 | There is no barrier under the stairs for cain detection [ANSI 4.4.2] | Install cane detection under stairs in compliance with ANSI 4.4.2 |

**APPENDIX G - 1608 Warehouse - Retrofits to Common Use and Public Use Areas**

**References in the citation column are as follows:**
**FHAG - Fair Housing Accessibility Guidelines**
**ANSI - ANSI A117.1-1986**
**ADA Standards - 1994 ADA Standards**
**Inspection Protocol - the Inspection Protocol separately agreed to by the parties and described in Part X of the Consent Decree**

| | PUBLIC AND COMMON USE AREAS | |
|---|---|---|
| **Requirements of the Guidelines** | **Violation** | **Retrofit** |
| FHAG Req. #2 | There is no marked and compliant handicapped parking space or aisle | Provide a compliant handicap parking space and sign on an accessible route. See Exterior Retrofit Inspection Protocol |
| FHAG Req. #2 | The route from parking to the unit has a running slope between 6.4% to 6.6%, with no handrails, rather than a maximum running slope of 5% | Install compliant handrails on both sides or replace walkway.  See Exterior Retrofit Inspection Protocol |
| FHAG Req. #2 | The garage doors have a 9' door and are 11'-5" wide inside, rather than the minimum 14'-2" width | See Exterior Retrofit Inspection Protocol |

**APPENDIX H - 307 S. Warren St.-- Retrofits to Common Use and Public Use Areas**

**References in the citation column are as follows:**
**FHAG - Fair Housing Accessibility Guidelines**
**ANSI - ANSI A117.1-1986**
**ADA Standards - 1994 ADA Standards**
**Inspection Protocol - the Inspection Protocol separately agreed to by the parties and described in Part X of the Consent Decree**

| | PUBLIC AND COMMON USE AREAS | |
|---|---|---|
| **Requirements of the Guidelines** | **Violation** | **Retrofit Retrofit [to be required only if Defendants do not comply with the requirements of Paragraphs 35-37 of the Consent Order]** |
| FHAG Req. #2 | The route from the public sidewalk to the covered units has a running slope of 7.9% to 19.3% and a cross slope of 3.2% to 13%, rather than a maximum runing slope of 5% and maximum cross slope of 2% | Install an accessible route to public street sidewalk. See Exterior Retrofit Inspection Protocol |
| FHAG Req. #2 | There is no marked and compliant handicapped parking space or aisle | Provide a compliant handicap parking space and sign on an accessible route. See Exterior Retrofit Inspection Protocol |
| FHAG Req. #2 | The route from parking to the unit has a running slope between 4.5% and 6.9%, and a cross slope between 4.5% to 4.8%, rather than a maximum 5% running slope and maximum 2% cross slope | Fix cross and runnings slopes to provide a compliant route. See Exterior Retrofit Inspection Protocol |

| FHAG Req. #2 | No accessible pedestrian route from the unit entrance to the trash dumpster | Relocate dumpsters to an accesible location. See Exterior Inspection Protocol |
|---|---|---|
| FHAG Req. #2 | No accessible pedestrian route from the unit entrance to the mailboxes | Relocate mailboxes to an accessible location. See Exterior Retrofit Inspection Protocol |

**APPENDIX I - 806 Hwy 12 - Retrofits to Common Use and Public Use Areas**

**References in the citation column are as follows:**
**FHAG - Fair Housing Accessibility Guidelines**
**ANSI - ANSI A117.1-1986**
**ADA Standards - 1994 ADA Standards**
**Inspection Protocol - the Inspection Protocol separately agreed to by the parties and described in Part X of the Consent Decree**

| | PUBLIC AND COMMON USE AREAS | |
|---|---|---|
| **Requirements of the Guidelines** | **Violation** | **Retrofit Retrofit [to be required only if Defendants do not comply with the requirements of Paragraphs 35-37 of the Consent Order]** |
| FHAG Req. #2 | There is no marked and compliant handicapped parking space or aisle | Provide a compliant handicap parking space and sign on an accessible route. See Exterior Retrofit Inspection Protocol |
| FHAG Req. #2 | The route from parking to the unit has a running slope between 6.2% and 11.4%, and four steps to the unit entrance, and 7 steps down inside the entrance foyer, rather than a maximum 5% running slope and a route with no steps | See Exterior Retrofit Inspection Protocol |
| FHAG Req. #2 | No accessible pedestrian route from the unit entrance to the trash dumpster | Relocate dumpster to a location on an accessible route with a compliant clear floor space at the dumpster. See Exterior Inspection Protocol |

| | | |
|---|---|---|
| FHAG Req. #2 | The maneuvering space at the mailboxes has asphalt that does not extend to the face of the boxes, as well as a 5.7% slope, rather than a compliant turn- space and the maximum 2% slope in all directions | Provide maneuvering space at mailboxes that is at least 36" wide with 5' x 5' turn-space and that slopes no more than 2% in any direction. Or relocate mailboxes to a compliant location on an accessible route with a compliant clear floor space at the mailbox. See Exterior Inspection Protocol |
| FHAG Req. #2 | The route from the storage units to the unit has a running slope between 6.1% to 7.5%; a cross slope between 3.1% to 4.4%;  a gap in the route 3/4" to 1" wide; as well as an abrupt level change of  5/8" to 1" high, rather than a maximum 5% running slope; a maximum 2% cross slope; a maximum gap of 1/2"; and a maximum level change of 1/4" to 1/2" high max | Install compliant handrails on both sides, fill gap and grind edge of concrete at 1:2 maximum ratio to eliminate level change or replace walkway.  See Exterior Retrofit Inspection Protocol |
| FHAG Req. #2 | The maneuvering space at the storage unit door has a cross slope of 3.8% to 4.4%, rather than a maximum 2.0% slope in all directions | Modify cross slopes to 2% or less in all direections |
| FHAG Req. #2 | The thresholds at the storage unit are 1 1/2" high with no bevel, rather than the maximum 1/2" high with bevel | Replace threshold at storage entrance door to make threshold flush; or ¼" high maximum; or 3/4" maximum with 1:2 bevel |

**APPENDIX J - 1125 Orion - Retrofits to Common Use and Public Use Areas**

References in the citation column are as follows:
FHAG - Fair Housing Accessibility Guidelines
ANSI - ANSI A117.1-1986
ADA Standards - 1994 ADA Standards
Inspection Protocol - the Inspection Protocol separately agreed to by the parties and described in Part X of the Consent Decree

| | PUBLIC AND COMMON USE AREAS | |
|---|---|---|
| **Requirements of the Guidelines** | **Violation** | **Retrofit Retrofit [to be required only if Defendants do not comply with the requirements of Paragraphs 35-37 of the Consent Order]** |
| FHAG Req. #2 | There is no marked and compliant handicapped parking space or aisle | Provide a compliant handicap parking space and sign on an accessible route. See Exterior Retrofit Inspection Protocol |
| FHAG Req. #2 | The route from parking to the unit has 3 steps up outside and 7 steps down inside the entrance foyer, rather than a route with no steps | Install an accessible route. See Exterior Retrofit Inspection Protocol |
| FHAG Req. #2 | No accessible pedestrian route from the unit entrance to the trash dumpster | Relocate dumpster to a location on an accessible route with a compliant clear floor space at the dumpster. See Exterior Inspection Protocol. |
| FHAG Req. #2 | Mailbox kiosks for the surrounding neighborhood are located near the fire station, with noncompliant manuevering space. No continuous accessible route from the units. | Relocate mailbox to an accesible location. See Exterior Inspection Protocol. |

**APPENDIX K - 3836 Hwy 12 - Retrofits to Common Use and Public Use Areas**

**References in the citation column are as follows:**
**FHAG - Fair Housing Accessibility Guidelines**
**ANSI - ANSI A117.1-1986**
**ADA Standards - 1994 ADA Standards**
**Inspection Protocol - the Inspection Protocol separately agreed to by the parties and described in Part X of the Consent Decree**

| Requirements of the Guidelines | PUBLIC AND COMMON USE AREAS | |
|---|---|---|
| | **Violation** | **Retrofit** |
| FHAG Req. #2 | There is no marked and compliant handicapped parking space or aisle. | Provide a compliant handicap parking space and sign on an accessible route. See Exterior Retrofit Inspection Protocol |
| FHAG Req. #2 | No accessible pedestrian route from the unit entrance to the trash dumpster | Relocate dumpster to a location on an accessible route with a compliant clear floor space at the dumpster |
| FHAG Req. #2 | No accessible pedestrian route from the unit entrance to the mailboxes, including cross slopes measured at 4.3% to 5.0%, rather than the maximum 2% cross slope | Relocate mailboxes to a compliant location on an accessible route with a compliant clear floor space at the mailbox. See Exterior Retrofit Inspection Protocol |
| FHAG Req. #2 | The garage doors have a 8' door and are 11'-3" wide inside, rather than the minimum 14'-2" width | See Exterior Retrofit Inspection Protocol |

**APPENDIX L - 906 Hwy 12 - Retrofits to Common Use and Public Use Areas**

**References in the citation column are as follows:**
**FHAG - Fair Housing Accessibility Guidelines**
**ANSI - ANSI A117.1-1986**
**ADA Standards - 1994 ADA Standards**
**Inspection Protocol - the Inspection Protocol separately agreed to by the parties and described in Part X of the Consent Decree**

| Requirements of the Guidelines | PUBLIC AND COMMON USE AREAS | |
| --- | --- | --- |
| | **Violation** | **Retrofit** |
| FHAG Req. #2 | There is no marked and compliant handicapped parking space and the aisle is marked at each curb ramp. The access Aisle, marked at each curb ramp, has a slope, on the left side of 6.5% to 6.8%, and a slope on the rights side of 2.5% to 9.7% .  The curb ramp has a running slope on the left side of 6.1% to 20.8% and a running slope on the right side of 1.3% to 18.7%.   The building requires at least one handicap space and aisle, with a maximum running slope of 5% and maximum cross slope of 2%, as well as a sign mounted a minumum of 60" above ground level | Provide a compliant handicap parking space and sign on an accessible route. See Exterior Retrofit Inspection Protocol |

| | | |
|---|---|---|
| FHAG Req. #2 | The curb ramp has a running slope on the left side of 6.1% to 20.8% and a running slope on the right side of 1.3% to 18.7%. In line curb ramps require a maximum running slop of 8.3%; a maximum cross slope of 2%; and a landing with a maximum slope of 2%  in all direections | Replace curb ramp.  See Exterior Retrofit Inspection Protocol |
| FHAG Req. #2 | The route from parking to the unit entrance has on the left side a running of 5.5% at one point, and a cross slope of 6.5% at one point; and on the right side a gap 1/2" to 3/4" wide and cross slopes 2.7% to 3.2% near corner. From either side, near Unit #2 there is an abrupt level change 3/4" high. The route requiers a maximum 5%running slope  max. (or max.8.33%  constructed as a ramp); a maximum 2% cross slope; level changes that are a maxiumum 1/4" high or 1/2" high max with bevel; and gaps no more than 1/2" wide | Fix cross slopes; fill gap and reduce level change. See Exterior Retrofit Inspection Protocol |
| FHAG Req. #2 | Boxes are located across from 900 building. Route requires travel on and along the vehicular drive. | Relocate mailboxes to a compliant location on an accessible route with a compliant clear floor space at the mailbox. See Exterior Retrofit Inspection Protocol |

**APPENDIX M - 900 E Old Hwy 12 - Retrofits to Common Use and Public Use Areas**

**References in the citation column are as follows:**
**FHAG - Fair Housing Accessibility Guidelines**
**ANSI - ANSI A117.1-1986**
**ADA Standards - 1994 ADA Standards**
**Inspection Protocol - the Inspection Protocol separately agreed to by the parties and described in Part X of the Consent Decree**

| Requirements of the Guidelines | Violation | Retrofit Retrofit [to be required only if Defendants do not comply with the requirements of Paragraphs 35-37 of the Consent Order] |
|---|---|---|
| | **PUBLIC AND COMMON USE AREAS** | |
| FHAG Req. #2 | There is no marked and compliant handicapped parking space or aisle | Provide a compliant handicap parking space and sign on an accessible route. See Exterior Retrofit Inspection Protocol |
| FHAG Req. #2 | The route from parking to the unit has 4 steps up to entrance, 7 steps down in vestibule, and no curb ramp from parking to sidewalk, rather than a route with no steps and compliant curb ramps to parking | Provide an accessible route. See Exterior Retrofit Inspection Protocol |
| FHAG Req. #2 | No accessible pedestrian route from the unit entrance to the trash dumpster | Relocate dumpster to a location on an accessible route with a compliant clear floor space at the dumpster |

| FHAG Req. #2 | No accessible pedestrian route from the unit entrance to the storage unit, as the route surface is gravel, rather than a stable and firm surface | Provide an accessible route to the storage unit. See Exterior Retrofit Inspection Protocol |
| --- | --- | --- |
| FHAG Req. #2 | The thresholds at the storage unit are 1 1/2" high with no bevel, rather than the maximum 1/2" high with bevel | Replace threshold at storage entrance door to make threshold flush; or ¼" high maximum; or 3/4" maximum with 1:2 bevel |

**APPENDIX N - 1053 Quail Dr - Retrofits to Common Use and Public Use Areas**

**References in the citation column are as follows:**
**FHAG - Fair Housing Accessibility Guidelines**
**ANSI - ANSI A117-1986**
**ADA Standards - 1994 ADA Standards**
**Inspection Protocol - the Inspection Protocol separately agreed to by the parties and described in Part X of the Consent Decree**

| | PUBLIC AND COMMON USE AREAS | |
|---|---|---|
| **Requirements of the Guidelines** | **Violation** | **Retrofit Retrofit [to be required only if Defendants do not comply with the requirements of Paragraphs 35-37 of the Consent Order]** |
| FHAG Req. #2 | There is no marked and compliant handicapped parking space or aisle | Provide a compliant handicap parking space and sign on an accessible route. See Exterior Retrofit Inspection Protocol |
| FHAG Req. #2 | The route from parking to the unit has 3 steps up to entrance, and several steps down in vestibule, rather than a route with no steps | Provide an accessible route. See Exterior Retrofit Inspection Protocol |
| FHAG Req. #2 | No accessible pedestrian route from the unit entrance to the trash dumpster | Relocate dumpster to a location on an accessible route with a compliant clear floor space at the dumpster |

**APPENDIX O - 1604 Warehouse - Retrofits to Common Use and Public Use Areas**

**References in the citation column are as follows:**
**FHAG - Fair Housing Accessibility Guidelines**
**ANSI - ANSI A117.1-1986**
**ADA Standards - 1994 ADA Standards**
**Inspection Protocol - the Inspection Protocol separately agreed to by the parties and described in Part X of the Consent Decree**

| Requirements of the Guidelines | PUBLIC AND COMMON USE AREAS | |
|---|---|---|
| | **Violation** | **Retrofit** |
| FHAG Req. #2 | There is no marked and compliant handicapped parking space or aisle | Provide a compliant handicap parking space and sign on an accessible route. See Exterior Retrofit Inspection Protocol |
| FHAG Req. #2 | The garage doors have a 9' door and are 11'-4" wide inside, rather than the minimum 14'-2" width | See Exterior Retrofit Inspection Protocol |

**APPENDIX P - 3760 E Old Hwy 12 - Retrofits to Common Use and Public Use Areas**

**References in the citation column are as follows:**
**FHAG - Fair Housing Accessibility Guidelines**
**ANSI - ANSI A117.1-1986**
**ADA Standards - 1994 ADA Standards**
**Inspection Protocol - the Inspection Protocol separately agreed to by the parties and described in Part X of the Consent Decree**

| | PUBLIC AND COMMON USE AREAS | |
|---|---|---|
| **Requirements of the Guidelines** | **Violation** | **Retrofit Retrofit [to be required only if Defendants do not comply with the requirements of Paragraphs 35-37 of the Consent Order]** |
| FHAG Req. #2 | The route from parking to the unit has a running slope of 10.9%, rather than a maximum 5% running slope | Replace walkway to reduce the running slope to 8.33% |
| FHAG Req. #2 | There is no barrier under the stairs for cain detection [ANSI 4.4.2] | Install cane detection under stairs in compliance with ANSI 4.4.2 |
| FHAG Req. #2 | There is no marked and compliant handicapped parking space or aisle | Provide a compliant handicap parking space and sign on an accessible route. See Exterior Retrofit Inspection Protocol |

| FHAG Req. #2 | The garage exceeds the minimum width of 14' 2" | See Exterior Retrofit Inspection Protocol |

**APPENDIX Q - 3768 E Old Hwy 12 - Retrofits to Common Use and Public Use Areas**

**References in the citation column are as follows:**
**FHAG - Fair Housing Accessibility Guidelines**
**ANSI - ANSI A117.1-1986**
**ADA Standards - 1994 ADA Standards**
**Inspection Protocol - the Inspection Protocol separately agreed to by the parties and described in Part X of the Consent Decree**

| Requirements of the Guidelines | PUBLIC AND COMMON USE AREAS | |
| --- | --- | --- |
| | **Violation** | **Retrofit** |
| FHAG Req. #2 | Minor Threshold Lip measured  1/2" abrupt or less, rather than a maximum 1/4" or 1/2" with a bevel 1:2 | Replace threshold or install a bevel at 1:2 |
| FHAG Req. #2 | There is no marked and compliant handicapped parking space or aisle | Provide a compliant handicap parking space and sign on an accessible route. See Exterior Retrofit Inspection Protocol |
| FHAG Req. #2 | There is no barrier under  the stairs for cain detection [ANSI 4.4.2] | Install cane detection under stairs in compliance with ANSI 4.4.2 |

| FHAG Req. #2 | The garage exceeds the minimum width of 14' 2" | See Exterior Retrofit Inspection Protocol |

**APPENDIX R - 3774 E Old Hwy 12 - Retrofits to Common Use and Public Use Areas**

**References in the citation column are as follows:**
**FHAG - Fair Housing Accessibility Guidelines**
**ANSI - ANSI A117.1-1986**
**ADA Standards - 1994 ADA Standards**
**Inspection Protocol - the Inspection Protocol separately agreed to by the parties and described in Part X of the Consent Decree**

| Requirements of the Guidelines | PUBLIC AND COMMON USE AREAS | |
|---|---|---|
| | **Violation** | **Retrofit** |
| FHAG Req. #2 | Noncompliant Threshold Lip, rather than a maximum 1/4" or 1/2" with a bevel 1:2 | Replace threshold or install a bevel at 1:2 |
| FHAG Req. #2 | There is no marked and compliant handicapped parking space or aisle | Provide a compliant handicap parking space and sign on an accessible route. See Exterior Retrofit Inspection Protocol |
| FHAG Req. #2 | There is no barrier under the stairs for cain detection [ANSI 4.4.2] | Install cane detection under stairs in compliance with ANSI 4.4.2 |
| FHAG Req. #2 | The units lack an accessible garage, with a miniimum width of 14'-2"  [FHAG, Requirement #2] | See Exterior Retrofit Inspection Protocol |

**APPENDIX S - 3782 E Old Hwy 12 - Retrofits to Common Use and Public Use Areas**

**References in the citation column are as follows:**
**FHAG - Fair Housing Accessibility Guidelines**
**ANSI - ANSI A117.1-1986**
**ADA Standards - 1994 ADA Standards**
**Inspection Protocol - the Inspection Protocol separately agreed to by the parties and described in Part X of the Consent Decree**

| Requirements of the Guidelines | PUBLIC AND COMMON USE AREAS | |
|---|---|---|
| | **Violation** | **Retrofit** |
| FHAG Req. #2 | There is no marked and compliant handicapped parking space or aisle | Provide a compliant handicap parking space and sign on an accessible route. See Exterior Retrofit Inspection Protocol |
| FHAG Req. #2 | The maneuvering space at the mailboxes lacks a compliant turn- space and slopes no more than 2% in all directions | Provide maneuvering space at mailboxes that is at least 36" wide with 5' x 5' turn-space and that slopes no more than 2% in any direction. Or relocate mailboxes to a compliant location. |
| FHAG Req. #2 | The units lack an accessible garage, with a miniimum width of 14'-2"  [FHAG, Requirement #2] | See Exterior Retrofit Inspection Protocol |

**APPENDIX T - 3790 E Old Hwy 12-- Retrofits to Common Use and Public Use Areas**

**References in the citation column are as follows:**
**FHAG - Fair Housing Accessibility Guidelines**
**ANSI - ANSI A117.1-1986**
**ADA Standards - 1994 ADA Standards**
**Inspection Protocol - the Inspection Protocol separately agreed to by the parties and described in Part X of the Consent Decree**

| Requirements of the Guidelines | PUBLIC AND COMMON USE AREAS | |
| --- | --- | --- |
| | **Violation** | **Retrofit** |
| FHAG Req. #2 | There is no marked and compliant handicapped parking space or aisle | Provide a compliant handicap parking space and sign on an accessible route. See Exterior Retrofit Inspection Protocol |
| FHAG Req. #2 | The maneuvering space at the mailboxes lacks a compliant turn- space and slopes no more than 2% in all directions | Provide maneuvering space at mailboxes that is at least 36" wide with 5' x 5' turn-space and that slopes no more than 2% in any direction. Or relocate mailboxes to a compliant location. |
| FHAG Req. #2 | The units lack an accessible garage, with a miniimum width of 14'-2"  [FHAG, Requirement #2] | See Exterior Retrofit Inspection Protocol |

**APPENDIX U - 3802 E Old Hwy 12 - Retrofits to Common Use and Public Use Areas**

**References in the citation column are as follows:**
**FHAG - Fair Housing Accessibility Guidelines**
**ANSI - ANSI A117.1-1986**
**ADA Standards - 1994 ADA Standards**
**Inspection Protocol - the Inspection Protocol separately agreed to by the parties and described in Part X of the Consent Decree**

| Requirements of the Guidelines | PUBLIC AND COMMON USE AREAS | |
|---|---|---|
| | **Violation** | **Retrofit** |
| FHAG Req. #2 | There is no marked and compliant handicapped parking space or aisle | Provide a compliant handicap parking space and sign on an accessible route. See Exterior Retrofit Inspection Protocol |
| FHAG Req. #2 | The units lack an accessible garage, with a miniimum width of 14'-2"  [FHAG, Requirement #2] | See Exterior Retrofit Inspection Protocol |
| FHAG Req. #2 | No accessible pedestrian route from the unit entrance to the trash dumpster | Relocate dumpster to a location on an accessible route with a compliant clear floor space at the dumpster |

**APPENDIX V - 3810 E Old Hwy 12 - Retrofits to Common Use and Public Use Areas**

**References in the citation column are as follows:**
**FHAG - Fair Housing Accessibility Guidelines**
**ANSI - ANSI A117.1-1986**
**ADA Standards - 1994 ADA Standards**
**Inspection Protocol - the Inspection Protocol separately agreed to by the parties and described in Part X of the**
**Consent Decree**

| | PUBLIC AND COMMON USE AREAS | |
|---|---|---|
| **Requirements of the Guidelines** | **Violation** | **Retrofit** |
| FHAG Req. #2 | There is no marked and compliant handicapped parking space or aisle | Install an accessible pakring space and a compliant sign. See Exterior Retrofit Inspection Protocol |
| FHAG Req. #2 | The route from parking to the unit has a running slope of 7.6% to 8.6% in the upper portion of the walk and a cross slope 3.5% at the lowest portion of the walk, rather than  a maximum running slope of 5%, or 8.33% if constructe as a ramp, and a maximum cross slope of 2% | Install handrails on both sides for running slope issues and replace  walk for cross slope. See Exterior Retrofit Inspection Protocol |
| FHAG Req. #2 | No accessible pedestrian route from the unit entrance to the trash dumpster | Relocate dumpster to a location on an accessible route with a compliant clear floor space at the dumpster |

**APPENDIX W - 3818 E Old Hwy 12 - Retrofits to Common Use and Public Use Areas**

**References in the citation column are as follows:**
**FHAG - Fair Housing Accessibility Guidelines**
**ANSI - ANSI A117.1-1986**
**ADA Standards - 1994 ADA Standards**
**Inspection Protocol - the Inspection Protocol separately agreed to by the parties and described in Part X of the Consent Decree**

| Requirements of the Guidelines | PUBLIC AND COMMON USE AREAS | |
|---|---|---|
| | **Violation** | **Retrofit** |
| FHAG Req. #2 | There is no marked and compliant handicapped parking space or aisle | Install an accessible pakring space and a compliant sign. See Exterior Retrofit Inspection Protocol |
| FHAG Req. #2 | The route from parking to the unit has a 2" high abrupt level change at the parking lot, rather than a maximum level check of 1/" to 1/2" high | Replace the sidewalk to fix 2" level change or grind the edge of concrete at 1:2 |
| FHAG Req. #2 | The units lack an accessible garage, with a miniimum width of 14'-2"  [FHAG, Requirement #2] | See Exterior Retrofit Inspection Protocol |
| FHAG Req. #2 | No accessible pedestrian route from the unit entrance to the trash dumpster | Relocate dumpster to a location on an accessible route with a compliant clear floor space at the dumpster |

**APPENDIX X - 3838 E Old Hwy 12 - Retrofits to Common Use and Public Use Areas**

**References in the citation column are as follows:**
**FHAG - Fair Housing Accessibility Guidelines**
**ANSI - ANSI A117.1-1986**
**ADA Standards - 1994 ADA Standards**
**Inspection Protocol - the Inspection Protocol separately agreed to by the parties and described in Part X of the Consent Decree**

| | PUBLIC AND COMMON USE AREAS | |
|---|---|---|
| **Requirements of the Guidelines** | **Violation** | **Retrofit** |
| FHAG Req. #2 | Minor Threshold Lip measured  1/2" abrupt or less, rather than a maximum 1/4" or 1/2" with a bevel 1:2 | Replace threshold or install a bevel at 1:2 |
| FHAG Req. #2 | There is no marked and compliant handicapped parking space or aisle | Provide a compliant handicap parking space and sign on an accessible route. See Exterior Retrofit Inspection Protocol |
| FHAG Req. #2 | The units lack an accessible garage, with a miniimum width of 14'-2"  [FHAG, Requirement #2], plus there are inaccessible slopes on route to garage | See Exterior Retrofit Inspection Protocol |
| FHAG Req. #2 | No accessible pedestrian route from the unit entrance to the trash dumpster | Relocate dumpster to a location on an accessible route with a compliant clear floor space at the dumpster |

| FHAG Req. #2 | No accessible pedestrian route from the unit entrance to the mailboxes | Relocate mailboxes to a compliant location on an accessible route with a compliant clear floor space at the mailbox. See Exterior Retrofit Inspection Protocol |
|---|---|---|
| FHAG Req. #2 | The maneuvering space at the mailboxes lacks a compliant turn- space and slopes no more than 2% in all directions | Relocate mailboxes to a compliant location on an accessible route with a compliant clear floor space at the mailbox. See Exterior Retrofit Inspection Protocol |

**APPENDIX Y - 3826 E Old Hwy 12 - Retrofits to Common Use and Public Use Areas**

**References in the citation column are as follows:**
**FHAG - Fair Housing Accessibility Guidelines**
**ANSI - ANSI A117.1-1986**
**ADA Standards - 1994 ADA Standards**
**Inspection Protocol - the Inspection Protocol separately agreed to by the parties and described in Part X of the Consent Decree**

| Requirements of the Guidelines | PUBLIC AND COMMON USE AREAS | |
|---|---|---|
| | **Violation** | **Retrofit** |
| FHAG Req. #2 | Minor Threshold Lip measured  1/2" abrupt or less, rather than a maximum 1/4" or 1/2" with a bevel 1:2 | Replace threshold or install a bevel at 1:2 |
| FHAG Req. #2 | There is no marked and compliant handicapped parking space or aisle | Provide a compliant handicap parking space and sign on an accessible route. See Exterior Retrofit Inspection Protocol |
| FHAG Req. #2 | The units lack an accessible garage, with a miniimum width of 14'-2"  [FHAG, Requirement #2], plus there are inaccesible slopes on route to garage | See Exterior Retrofit Inspection Protocol |
| FHAG Req. #2 | No accessible pedestrian route, with compliant slopes, from the unit entrance to the mailboxes | Relocate mailboxes to a compliant location on an accessible route with a compliant clear floor space at the mailbox. See Exterior Retrofit Inspection Protocol |

| FHAG Req. #2 | The maneuvering space at the mailboxes lacks a compliant turn- space and slopes no more than 2% in all directions | Relocate mailboxes to a compliant location on an accessible route with a compliant clear floor space at the mailbox. See Exterior Retrofit Inspection Protocol |
| --- | --- | --- |

**APPENDIX Z - 3791 Beechnut - Retrofits to Common Use and Public Use Areas**

**References in the citation column are as follows:**
**FHAG - Fair Housing Accessibility Guidelines**
**ANSI - ANSI A117.1-1986**
**ADA Standards - 1994 ADA Standards**
**Inspection Protocol - the Inspection Protocol separately agreed to by the parties and described in Part X of the Consent Decree**

| Requirements of the Guidelines | Violation | Retrofit |
|---|---|---|
| FHAG Req. #2 | Minor Threshold Lip measured  1/2" abrupt or less, rather than a maximum 1/4" or 1/2" | Replace threshold or install a bevel at 1:2 |
| FHAG Req. #2 | Route from parking to unit entrance has non-compliant curb ramp and a vehicle overhangs the accessible route, rather than a clear accessible route with curb ramps with a maximum running slope of 8.33%, a maximum cross slope of 2%, and a landing with maximum cross slopes of 2% in all directions | Replace curb ramp and install wheel stops along an accessible route. See Exterior Retrofit Inspection Protocol |
| FHAG Req. #2 | There is no marked and compliant handicapped parking space or aisle | Provide a compliant handicap parking space and sign on an accessible route. See Exterior Retrofit Inspection Protocol |
| FHAG Req. #2 | There is no barrier under  the stairs for cain detection [ANSI 4.4.2] | Install cane detection under stairs in compliance with ANSI 4.4.2 |

| | | |
|---|---|---|
| FHAG Req. #2 | No accessible pedestrian route from the unit entrance to the trash dumpster | Relocate dumpster to a location on an accessible route with a compliant clear floor space at the dumpster |
| FHAG Req. #2 | No accessible pedestrian route from the unit entrance to the mailboxes, including a small curb; narrow sidewalk 27" wide at boxes; and non-compliant cross slopes | Provide maneuvering space at mailboxes that is at least 36" wide with 5' x 5' turn-space and that slopes no more than 2% in any direction. Or relocate mailboxes to a compliant location. See Exterior Retrofit Inspection Protocol |

**APPENDIX AA.1 - 802 E Old Hwy 12 - Retrofits to Common Use and Public Use Areas**

**References in the citation column are as follows:**
**FHAG - Fair Housing Accessibility Guidelines**
**ANSI - ANSI A117-1986**
**ADA Standards - 1994 ADA Standards**
**Inspection Protocol - the Inspection Protocol separately agreed to by the parties and described in Part X of the Consent Decree**

| Requirements of the Guidelines | PUBLIC AND COMMON USE AREAS | |
| --- | --- | --- |
| | **Violation** | **Retrofit** |
| FHAG Req. #2 | Route from parking to unit entrance has a narrow transition from parking to sidewalk that is less than 36" wide, and includes an overly steep curb ramp, rather than a curb ramp with a maximum running slope of 8.33%, a maximum cross slope of 2%, and a landing with maximum cross slopes of 2% in all directions | Replace curb ramp on an accessible route. See Exterior Retrofit Inspection Protocol |
| FHAG Req. #2 | There is no marked and compliant handicapped parking space or aisle | Provide a compliant handicap parking space and sign on an accessible route. See Exterior Retrofit Inspection Protocol |
| FHAG Req. #2 | No accessible pedestrian route from the unit entrance to the trash dumpster | Relocate dumpster to a location on an accessible route with a compliant clear floor space at the dumpster. See Exterior Retrofit Inspection Protocol |

| FHAG Req. #2 | The maneuvering space at the mailboxes lacks a compliant turn- space and slopes no more than 2% in all directions | Provide maneuvering space at mailboxes that is at least 36" wide with 5' x 5' turn-space and that slopes no more than 2% in any direction. Or relocate mailboxes to a compliant location. See Exterior Retrofit Inspection Protocol |

**APPENDIX BB - 801 Riggs - Retrofits to Common Use and Public Use Areas**

References in the citation column are as follows:
FHAG - Fair Housing Accessibility Guidelines
ANSI - ANSI A117.1-1986
ADA Standards - 1994 ADA Standards
Inspection Protocol - the Inspection Protocol separately agreed to by the parties and described in Part X of the Consent Decree

| Requirements of the Guidelines | PUBLIC AND COMMON USE AREAS | |
|---|---|---|
| | Violation | Retrofit |
| FHAG Req. #2 | Minor Threshold Lip measured  1/2" abrupt or less, rather than a maximum 1/4" or 1/2" with a bevel 1:2 | Replace threshold or install a bevel at 1:2 |
| FHAG Req. #2 | There is no compliant handicapped parking space or aisle | Provide a compliant handicap parking space and sign on an accessible route. See Exterior Retrofit Inspection Protocol |
| FHAG Req. #2 | Route from parking to unit entrance lacks a curb ramp from the parking area to the sidewalk | Install a compliant curb ramp.  See Exterior Retrofit Inspection Protocol |
| FHAG Req. #2 | No accessible pedestrian route from the unit entrance to the trash dumpster | Relocate dumpster to a location on an accessible route with a compliant clear floor space at the dumpster |

| FHAG Req. #2 | There is no barrier under  the stairs for cain detection [ANSI 4.4.2] | Install cane detection under stairs in compliance with ANSI 4.4.2 |

**APPENDIX CC - 106 Dudley - Retrofits to Common Use and Public Use Areas**

**References in the citation column are as follows:**
**FHAG - Fair Housing Accessibility Guidelines**
**ANSI - ANSI A117.1-1986**
**ADA Standards - 1994 ADA Standards**
**Inspection Protocol - the Inspection Protocol separately agreed to by the parties and described in Part X of the Consent Decree**

| Requirements of the Guidelines | PUBLIC AND COMMON USE AREAS | |
|---|---|---|
| | **Violation** | **Retrofit** |
| FHAG Req. #2 | Route from parking to unit entrance lacks a curb ramp from parking area to the sidewalk | Install a compliant curb ramp.  See Exterior Retrofit Inspection Protocol |
| FHAG Req. #2 | There is no marked and compliant handicapped parking space or aisle | Provide a compliant handicap parking space and sign on an accessible route. See Exterior Retrofit Inspection Protocol |

**APPENDIX DD - 110 Dudley - Retrofits to Common Use and Public Use Areas**

**References in the citation column are as follows:**
**FHAG - Fair Housing Accessibility Guidelines**
**ANSI - ANSI A117.1-1986**
**ADA Standards - 1994 ADA Standards**
**Inspection Protocol - the Inspection Protocol separately agreed to by the parties and described in Part X of the Consent Decree**

| Requirements of the Guidelines | PUBLIC AND COMMON USE AREAS | |
| --- | --- | --- |
| | **Violation** | **Retrofit** |
| FHAG Req. #2 | There is no marked and compliant handicapped parking space or aisle | Provide a compliant handicap parking space and sign on an accessible route. See Exterior Retrofit Inspection Protocol |
| FHAG Req. #2 | No accessible pedestrian route from the unit entrance to the trash dumpster | Relocate dumpster to a location on an accessible route with a compliant clear floor space at the dumpster |

**APPENDIX EE - 114 Dudley - Retrofits to Common Use and Public Use Areas**

**References in the citation column are as follows:**
**FHAG - Fair Housing Accessibility Guidelines**
**ANSI - ANSI A117.1-1986**
**ADA Standards - 1994 ADA Standards**
**Inspection Protocol - the Inspection Protocol separately agreed to by the parties and described in Part X of the Consent Decree**

| | PUBLIC AND COMMON USE AREAS | |
|---|---|---|
| **Requirements of the Guidelines** | **Violation** | **Retrofit** |
| FHAG Req. #2 | There is no marked and compliant handicapped parking space or aisle | Provide a compliant handicap parking space and sign on an accessible route. See Exterior Retrofit Inspection Protocol |
| FHAG Req. #2 | No accessible pedestrian route from the unit entrance to the trash dumpster | Relocate dumpster to a location on an accessible route with a compliant clear floor space at the dumpster |

**APPENDIX FF - 118 Dudley - Retrofits to Common Use and Public Use Areas**

**References in the citation column are as follows:**
**FHAG - Fair Housing Accessibility Guidelines**
**ANSI - ANSI A117.1-1986**
**ADA Standards - 1994 ADA Standards**
**Inspection Protocol - the Inspection Protocol separately agreed to by the parties and described in Part X of the Consent Decree**

| Requirements of the Guidelines | PUBLIC AND COMMON USE AREAS | |
|---|---|---|
| | Violation | Retrofit |
| FHAG Req. #2 | There is no marked and compliant handicapped parking space or aisle | Provide a compliant handicap parking space and sign on an accessible route. See Exterior Retrofit Inspection Protocol |
| FHAG Req. #2 | No accessible pedestrian route from the unit entrance to the trash dumpster | Relocate dumpster to a location on an accessible route with a compliant clear floor space at the dumpster |

**APPENDIX HH - 111 Dudley - Retrofits to Common Use and Public Use Areas**

**References in the citation column are as follows:**
**FHAG - Fair Housing Accessibility Guidelines**
**ANSI - ANSI A117.1-1986**
**ADA Standards - 1994 ADA Standards**
**Inspection Protocol - the Inspection Protocol separately agreed to by the parties and described in Part X of the Consent Decree**

| Requirements of the Guidelines | PUBLIC AND COMMON USE AREAS | |
| --- | --- | --- |
| | **Violation** | **Retrofit** |
| FHAG Req. #2 | Route from parking to unit entrance lacks a curb ramp from the parking area to the sidewalk | Install a compliant curb ramp.  See Exterior Retrofit Inspection Protocol |
| FHAG Req. #2 | There is no marked and compliant handicapped parking space or aisle | Provide a compliant handicap parking space and sign on an accessible route. See Exterior Retrofit Inspection Protocol |
| FHAG Req. #2 | No accessible pedestrian route from the unit entrance to the trash dumpster | Relocate dumpster to a location on an accessible route with a compliant clear floor space at the dumpster |

**APPENDIX II - 105 E Lewis - Retrofits to Common Use and Public Use Areas**

**References in the citation column are as follows:**
**FHAG - Fair Housing Accessibility Guidelines**
**ANSI - ANSI A117.1-1986**
**ADA Standards - 1994 ADA Standards**
**Inspection Protocol - the Inspection Protocol separately agreed to by the parties and described in Part X of the Consent Decree**

| Requirements of the Guidelines | PUBLIC AND COMMON USE AREAS | |
| --- | --- | --- |
| | **Violation** | **Retrofit** |
| FHAG Req. #2 | Route from parking to unit entrance lacks a curb ramp from the parking area to the sidewalk | Install a compliant curb ramp.  See Exterior Retrofit Inspection Protocol |
| FHAG Req. #2 | There is no marked and compliant handicapped parking space or aisle | Provide a compliant handicap parking space and sign on an accessible route. See Exterior Retrofit Inspection Protocol |

**APPENDIX JJ - 114 King - Retrofits to Common Use and Public Use Areas**

**References in the citation column are as follows:**
**FHAG - Fair Housing Accessibility Guidelines**
**ANSI - ANSI A117.1-1986**
**ADA Standards - 1994 ADA Standards**
**Inspection Protocol - the Inspection Protocol separately agreed to by the parties and described in Part X of the Consent Decree**

| Requirements of the Guidelines | PUBLIC AND COMMON USE AREAS | |
|---|---|---|
| | **Violation** | **Retrofit** |
| FHAG Req. #2 | The route from the parking the unit has an abrupt level change at parking that is higher than 1/4" or 1/2" with a bevel of 1:2 | Eliminate level change or install a curb ramp. Let's discuss. See Exterior Retrofit Inspection Protocol |
| FHAG Req. #2 | There is no marked and compliant handicapped parking space or aisle | Provide a compliant handicap parking space and sign on an accessible route. See Exterior Retrofit Inspection Protocol |

**APPENDIX KK**

**NOTICE OF RETROFITS TO PUBLIC AND COMMON USE AREAS AT [SUBJECT PROPERTY]**

The federal Fair Housing Act requires that the public and common use areas at complexes such as [SUBJECT PROPERTY] have certain features of physical accessibility for persons with disabilities.

As a result of recent events, it has been brought to our attention that certain features of the public and common areas of [SUBJECT PROPERTY] can be modified to provide greater accessibility for persons with disabilities, consistent with the accessibility requirements of the federal Fair Housing Act. We welcome persons with disabilities residents and guests at [SUBJECT PROPERTY]. We are writing this notice to let you know that beginning on _____, 2016, contractors will be coming onto the property to begin the process of modifying certain aspects of the public and common use areas. We expect the process to last approximately _____ weeks, weather permitting.

Generally, the workers will modify or "retrofit" certain sidewalks, install curb cuts and ramps or modify existing ones along certain pathways to certain ground-floor units.  We apologize for any inconveniences you may incur as a result of this work.

If you have any questions regarding these modifications, please contact us at _____.

**[ENTITY PERFORMING RETROFIT]**

## APPENDIX LL

## NOTICE TO TENANTS

Dear Tenant:

This is to advise you that, as a result of a settlement in a case brought by the United States against the owners of this apartment complex, we have agreed to retrofit the ground floor units [all units if elevator building] at _____ [Subject Property] to provide greater accessibility for people with disabilities. Your unit qualifies for retrofitting to provide greater accessibility.

Although your apartment unit will be retrofitted automatically after your tenancy ends, we want you to know that you may request to have your apartment modified now at no cost to you. The actual work will take no longer than ___ days from the date construction begins and we will provide you with another unit in this development or comparable alternative living arrangements during that time if you need to leave your apartment for more than 24 consecutive hours. In scheduling when the repairs will take place, we will take into account your preferences and convenience.

You should be aware that this work must be completed within the next [years], regardless of your intention to stay in your apartment for a longer duration. Please let us know if you are interested in having the work done now and we will provide you with additional information.

**[ENTITY PERFORMING RETROFIT]**

# APPENDIX MM

## FAIR HOUSING ACT COMPLIANCE STATEMENT

It is the policy of Nistler Properties, LLC; Roylance & Nistler Properties, LLC; Werner-Nistler Properties, LLC; and Derek Brown Consulting, Inc., to comply with state and federal laws concerning accessibility of the properties they design, own or manage, and to notify all officers, agents and employees that accessibility is the law. In particular, Nistler Properties, LLC; Roylance & Nistler Properties, LLC; Werner-Nistler Properties, LLC; and Derek Brown Consulting, Inc. are committed to insuring that all of the properties they design, own or manage meet the accessibility standards set out in the Fair Housing Act Design Manual and the Fair Housing Act Accessibility Guidelines, which provide technical guidance on how to make a multi-family housing project accessible in the following respects:

(i)     the public use and common use portions of such dwellings are readily accessible to and usable by persons with a disability;

(ii)    all of the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by persons with a disability using wheelchairs; and

(iii)   all premises within such dwellings contain the following features of adaptive design:

(I)     an accessible route into and through the dwelling;
(II)    light switches, electrical outlets, thermostats, and other environmental controls in accessible locations;
(III)   reinforcements in bathroom walls to allow later installation of grab bars; and

(IV)   usable kitchens and bathrooms such that an
individual using a wheelchair can maneuver about the space.

To carry out this policy, Nistler Properties, LLC; Roylance & Nistler Properties, LLC; Werner-Nistler Properties, LLC; and Derek Brown Consulting, Inc., shall provide to each employee or agent who has management authority over the design, management or construction of multi-family properties for Nistler Properties, LLC; Roylance & Nistler Properties, LLC; Werner-Nistler Properties, LLC; and/or Derek Brown Consulting, Inc. a copy of:

(i)    the Fair Housing Act Design Manual;

(ii)   the Fair Housing Act Design Guidelines;

(iii)   the Joint Statement of the Department of Housing and Urban Development and the Department of Justice regarding "Reasonable Accommodations under the Fair Housing Act;" and

(iv)   the Joint Statement of the Department of Housing and Urban Development and the Department of Justice regarding "Reasonable Modifications under the Fair Housing Act."

Furthermore, each of these employees or agents shall be instructed to be familiar with and refer to these documents as needed in the fulfillment of their duties.

In addition, every employee or agent who has management authority over the design, management or construction of multi-family dwellings shall be informed of, and acknowledge the following obligations of Nistler Properties, LLC; Roylance & Nistler Properties, LLC; Werner-Nistler Properties, LLC; and Derek Brown Consulting, Inc.:

(i)     the obligation to provide training in the design and construction requirements of the Fair Housing act to employees and agents who have management authority over the development, design and/or construction of multi-family housing covered under the FHA;

(ii)    the prohibition against raising rents or fees in order to pay costs associated with bringing existing multi-family housing which they own into compliance with the FHA;

(iii)   the obligation to post and prominently display in the sales or rental offices of 175 and 195 Silsbee Avenue, 109 and 111 Reed Avenue and 1220 and 1240 Laurel Street in Helena, Montana ("Subject Properties") and/or in their places of business a poster no smaller than 10 by 14 inches (10" x 14") indicating that all dwellings are available for rental on a nondiscriminatory basis; and

(iv)    the obligation to make all advertising in newspapers and all pamphlets, brochures and other promotional literature regarding the Subject Properties, or any new complexes that Defendants may design, develop or construct, contain, in a conspicuous location, a statement that the dwelling units comply with the accessibility requirements of the federal Fair Housing Act.

Finally, each employee or agent with management authority over the design, management or construction of multi-family properties for Nistler Properties, LLC; Roylance & Nistler Properties, LLC; Werner-Nistler Properties, LLC;  and Derek Brown Consulting, Inc. shall be required to sign a written acknowledgment that they have read and are familiar with this FHA Compliance Statement.

Dated this ___ day of _____, 201_.

Nistler Properties, LLC;

Roylance & Nistler Properties, LLC; and

Werner-Nistler Properties, LLC; _____

By: Gabriel Nistler, its Managing Member


Derek Brown Consulting, Inc.


_____

By:   Derek Brown, Owner

## APPENDIX NN

## ACKNOWLEDGMENT OF RECEIPT OF CONSENT ORDER OR COMPLIANCE STATEMENT

On _____, I received copy of and have read the Consent Order entered by the federal district court in *United States v. Nistler et al.,* Civil Action _____ (D. Mont.)/Compliance Statement. I have had all of my questions concerning the Consent Order/Compliance Statement and the Fair Housing Act answered to my satisfaction.

_____
(Signature)

_____
(Print name)

_____
(Position)

_____
(Date)

## APPENDIX OO

## CERTIFICATION OF FAIR HOUSING TRAINING

On _____, I attended training on the federal Fair Housing Act, including its requirements concerning accessibility for persons with disabilities. I have had all of my questions concerning the Fair Housing Act answered to my satisfaction.

_____
(Signature)

_____
(Print name)

_____
(Position)

_____
(Date)

# APPENDIX PP

## NOTICE TO POTENTIAL AGGRIEVED PERSONS AT HELENA AND EAST HELENA PROPERTIES

On _____, 2016, the United States District Court for the District of Montana entered a Consent Order resolving a housing discrimination lawsuit brought by the United States against individuals and entities involved in the design and construction of thirty-one apartment complexes throughout Helena and East Helena, Montana. The United States alleges that the units and many common use areas are not accessible to persons with physical disabilities. As part of the Consent Order, Defendants have agreed to retrofit covered dwelling units and common use and public use areas to comply with the Fair Housing Act at the apartment complexes located at:

- 1604 Warehouse Ave. located in Helena, Montana;
- 1608 Warehouse Ave. located in Helena, Montana;
- 307 South Warren St. located in Helena, Montana;
- 335 South Warren St. located in Helena, Montana;
- 801 East Riggs St. located in Helena, Montana;
- 105 East Lewis St. located in East Helena, Montana;
- 114 East King St. located in East Helena, Montana;
- 802 East Main St. (Old Highway 12) located in East Helena, Montana;
- 806 East Main St. (Old Highway 12) located in East Helena, Montana;
- 900 East Main St. (Old Highway 12) located in East Helena, Montana;
- 906 East Main St. (Old Highway 12) located in East Helena, Montana;
- 106 East Dudley St. located in East Helena, Montana;
- 110 East Dudley St. located in East Helena, Montana;
- 111 East Dudley St. located in East Helena, Montana;
- 114 East Dudley St. located in East Helena, Montana;
- 118 East Dudley St. located in East Helena, Montana;
- 3752 East Old Highway 12 located in East Helena, Montana;
- 3760 East Old Highway 12 located in East Helena, Montana;
- 3768 East Old Highway 12 located in East Helena, Montana;
- 3774 East Old Highway 12 located in East Helena, Montana;
- 3782 East Old Highway 12 located in East Helena, Montana;

- 3790 East Old Highway 12 located in East Helena, Montana;
- 3802 East Old Highway 12 located in East Helena, Montana;
- 3810 East Old Highway 12 located in East Helena, Montana;
- 3818 East Old Highway 12 located in East Helena, Montana;
- 3826 East Old Highway 12 located in East Helena, Montana;
- 3836 East Old Highway 12 located in East Helena, Montana;
- 3838 East Old Highway 12 located in East Helena, Montana;
- 3791 Beechnut St. located in East Helena, Montana;
- 1053 Orion Rd. located in East Helena, Montana; and
- 1125 Orion Rd located in East Helena, Montana.

The Consent Order also establishes a Settlement Fund to compensate persons who have been harmed as a result of this alleged discrimination at any of the above-named complexes. You or members of your family may be qualified to recover from the Settlement Fund if you or members of your family allege that you:

- were discouraged from living at any of the above-named complexes because of the lack of accessible features of the apartment or the complex;

- rented an apartment but were unable to use, or had difficulties using portions of your apartment or the complex because they were not accessible (including the inability to have visitors who have disabilities);

- paid to have any portion of your apartment or the complex modified to be more accessible;

- were not informed about, or offered, all available apartment units because of your disability or the disability of someone who would be living with you; or

- requested and were denied a reasonable accommodation for your disability or the disability of someone who was living with you.

*If you believe you have been harmed because of your disability at any of the above-named apartment complexes, or if you have information about*

*someone else who may have been harmed, please contact the United States Department of Justice at: 1-800-896-7743, _____*

*You also may write to United States Department of Justice, Civil Rights Division, Housing and Civil Enforcement Section, 950 Pennsylvania Avenue, N.W. – G St., Washington, DC, 20530, Att: DJ 175-83-17*

**\*\*\* You must call or write no later than 365 days from [the date of entry of the Consent Order] to be eligible for compensation, and your telephone message or letter must include your name, address, and, if possible, at least two telephone numbers where you may be reached.**

# APPENDIX QQ

## RELEASE OF ALL CLAIMS

In consideration of and contingent upon the payment of the sum of ($_____ ), pursuant to the Consent Order entered in *United States* v. *Gabriel Nistler, et al.*, Case No. _____ (D. Mont.), by the United States District Court of the District of Montana, I hereby release and forever discharge the Defendants named in this action from any and all liability for any claims, legal or equitable, I may have against them arising out of the issues alleged in this action as of the date of the entry of that Consent Order. I fully acknowledge and agree that this release of the Defendants will be binding on my heirs, representatives, executors, successors, administrators, and assigns. I hereby acknowledge that I have read and understand this release and have executed it voluntarily and with full knowledge of its legal consequences.

(Signature)

NAME: _____

ADDRESS: _____

DATE: _____

**APPENDIX RR**

**REQUIREMENTS FOR NON-COMPLIANCE**

Pursuant to paragraph 38 of this Order, if Defendants fail to comply with all of the requirements of paragraphs 35-36 of this Order, then they shall take the following actions within 24-months of the date of non-compliance with the requirements of paragraphs 35-36:

- Provide all interior retrofits for the ground floor units at 307 South Warren St., 335 South Warren St., 3752 East Old Highway 12, 3760 East Old Highway 12, 806 Old Highway 12, 900 Old Highway 12, 1053 Quail Drive, 1125 Orion Drive, detailed in Appendix A, B, and D of this Order, as well as the Interior Retrofit Protocol.

- Provide all exterior retrofits for 307 South Warren St., 335 South Warren St., 3752 East Old Highway 12, 3760 East Old Highway 12, 806 Old Highway 12, 900 Old Highway 12, 1053 Quail Drive, and 1125 Orion Drive, detailed in Appendix E, Appendix F, Appendix H, Appendix I, Appendix J, Appendix M, Appendix N, and Appendix P, as well as the Exterior Retrofit Protocol.